[Crim. No. 12428.   Second Dist., Div. Three.   Dec. 27, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD CARLTON GLOVER, Defendant and Appellant.

Kate Whyner, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Bechefsky, Deputy Attorney General, for Plaintiff and Respondent.

COBEY, J.—The primary question raised by this appeal from a judgment of conviction after a jury trial upon pleas of not guilty and not guilty by reason of insanity of the felony of battery upon a peace officer, (Pen. Code, § 243) is whether the trial court, on its own motion, should have instructed the jury upon the defense of diminished capacity because of the evidence of appellant's epileptic condition at the time of the offense. Appellant also challenges the jury's verdict that appellant was sane at the time the offense was committed upon several grounds which will be discussed herein.

The facts regarding the offense may be stated quite briefly. They were developed entirely by six prosecution witnesses (four sheriff's deputies and two trusties) as the defense offered no evidence of its own during the guilt phase of the trial.[1]

On Saturday, December 4, 1965, about 4 p.m. Deputy Sheriff Ronnie D. Peters, with the assistance of two trusties, was serving the evening meal from a food cart to the prisoners in the Ventura County jail. He was in regulation uniform with identifying shoulder patches and badge. Appellant, a prisoner, came out of the cell block for his tray of food, picked it up and started to return to the cell block. Peters told him that the next time he came out for food he should first give his name in the proper way and should have his shirt tucked into his trousers. Both of these things were required by jail regulations. Appellant mumbled something in reply and Peters then told him to come back, which he did. Peters asked appellant "If he was going to give us a bad time?" Appellant, who was quite angry about being called back, replied, "You are fucking with me,"[2] and slammed the tray and food into

---

[1] In this opinion we shall use the phrase "the guilt phase" of the trial to indicate that portion of the trial in which the issue of appellant's guilt or innocence was decided without regard to his claim of insanity. The second portion of the trial will be referred to as "the insanity phase" of the trial.

[2] The two trusties testified that what appellant said at this time to Peters actually was "Why are you all the time picking on me" or words to that effect and that Peters replied "I am not picking on you."

Peters' face, cutting Peters about the left eye and dumping the food down the front of Peters' uniform. Appellant, a very large man, then put his hand toward Peters' throat in a choking manner. Peters, who was hemmed into a corner grabbed appellant by the shirt front and started to circle with him so that appellant could not exert full pressure on Peters' neck. At this point two other deputies came and with Peters wrestled appellant to the floor, where after a brief struggle he was subdued, gave up and was taken to the disciplinary cell by five deputies. Throughout this incident appellant was obviously very angry but said nothing further except "I give up" or words to that effect when subdued on the floor.[3]

█ Turning now to the primary issue on this appeal of whether the trial court on its own motion should have instructed the jury on the defense of diminished capacity, we first note that this defense is available only when a particular mental state, such as a specific criminal intent (as opposed to the general criminal intent required by Penal Code, section 20) is *by statute* made an essential element of the crime. (*People* v. *Wells,* 33 Cal.2d 330, 350, 351 [202 P.2d 53].) Neither the statute defining battery, (Pen. Code, § 242) nor that defining battery upon a peace officer (Pen. Code, § 243), both of which we have just quoted in relevant part in footnote 3, makes mention of any specific criminal intent as an element of the crime of battery upon a peace officer. In *People* v. *Sanchez,* 35 Cal.2d 522, 527-528, 531 [219 P.2d 9], it was held that proof of specific intent with respect to the crime of assault with a deadly weapon was *not* essential and that an instruction stating expressly to the contrary was erroneous. Likewise, in *People* v. *Carmen,* 36 Cal. 2d 768, 776 [228 P.2d 281], it was stated that "in assault cases intent need not be specific . . ." and in *People* v. *Hower,* 151 Cal. 638, 644 [91 P.507], it was pointed out that simple assault does not include as an essential element the specific intent required

[3] Appellant also challenges the sufficiency of the evidence to prove his guilt; but, laying to one side for the moment the question of his mental condition, the evidence just summarized clearly establishes his guilt of the offense of which he was convicted. Penal Code, section 242 has always provided: "A battery is any willful and unlawful use of force or violence upon the person of another." Furthermore at the time of the commission of the offense, Penal Code, section 243, in relevant part, read as follows: "When it is committed against the person of a peace officer . . . and the person committing the offense knows or reasonably should know that such victim is a peace officer . . . engaged in the performance of his duties, and such peace officer . . . is engaged in the performance of his duties, . . . ."

506

in the felony of assault with intent to commit murder. A battery is simply a consummated assault. (*People* v. *Duchon*, 165 Cal. App. 2d 690, 693 [332 P.2d 373], hear. den.)

On the other hand, it has been held that to constitute an assault there must be a specific intent to commit a battery. (*People* v. *Corson*, 221 Cal. App. 2d 579, 581 [34 Cal. Rptr. 584].)[4] But, as we have noted, the requirement of such a specific intent, if it exists, is not expressed "by statute."

However, the basic applicable holding in *Wells* is that the defense of diminished capacity is available whenever a particular mental state is by statute made an essential element of the crime. Under *Sanchez*, this defense may be interposed whenever such a condition exists in a nonhomicide crime as well as in some involving homicide. Battery upon a peace officer does require by statute a particular mental state—that is, that "the person committing the offense knows or reasonably should know that such victim is a peace officer . . . engaged in the performance of his duties . . . ." (Pen. Code, § 243.) Such knowledge or awareness may be prevented by the effect of a particular mental disease such as epilepsy.[5]

■ In this state of the law, we will assume, for the sake of argument only, that the defense of diminished capacity was properly available in this case. ■ In this situation, when there is substantial evidence to inform the trial court that a defendant is relying upon this defense, or any evidence deserving of consideration of such diminished capacity is introduced, or the evidence indicates an issue of diminished capacity, the trial court, on its own motion, must instruct the jury as to the legal effect of such diminished capacity. (*People* v. *Henderson*, 60 Cal. 2d 482, 489-491 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Conley*, 64 Cal. 2d 310, 319 [49 Cal.Rptr. 815, 411 P.2d 911]; *People* v. *Anderson*, 63 Cal. 2d 351, 366 [46 Cal.Rptr. 763, 406 P.2d 43].)

■ Our inquiry upon this point thus becomes, was there substantial evidence during the guilt phase of the trial which should have indicated to the court that appellant was then

---

[4]In this connection it is of interest to note that the trial court's instructions upon criminal intent all relate to general as opposed to specific intent. The trial court gave CALJIC instructions #72, #72-A (as modified by the court) #73 and #75.

[5]In the recent case of *People* v. *Hoxie*, 252 Cal.App.2d 901, 914-916 [61 Cal.Rptr. 37], it was pointed out that our Supreme Court has thus far been willing to hold in homicide cases, as a matter of law, that undisputed mental illnesses can negative deliberation and premeditation but has not yet held in such cases that it can have such an effect upon "a less complex specific intent." (*Id.* at p. 916.)

relying upon the defense of diminished capacity? All that the record shows in this connection is that the victim of the battery, Peters, testified that he knew that appellant "was subject to epileptic seizures;" that one of the trusties testified that he had heard that appellant suffered from epilepsy; that the second trusty testified that appellant, sometimes previously in the jail, acted sort of funny "like he was having a fit or something like that," that previously he "sort of acted odd"; and that this happened a couple of times before December 4, 1965.

But, unlike the insanity phase of the trial, where appellant's counsel used a psychiatrist's testimony in support of an express and specific claim that the battery had occurred while appellant was undergoing a psychomotor epileptic seizure, during the guilt phase of the trial appellant's counsel did not advance this contention *at any time* and did not even mention it to the jury in either of his arguments to them. In addition, the victim, Peters, testified that at the time of the battery he did not note anything "different or unusual" about appellant's appearance and this testimony was corroborated by that of the two trusties.

Thus, at the guilt phase of the trial there was neither expert medical testimony nor any other evidence offered that appellant was undergoing a psychomotor epileptic seizure at the time of the battery. Without such expert evidence (see *People v. Conley, supra,* 64 Cal. 2d 310, 325), and particularly without any evidence at all of an epileptic seizure at such time appellant was not entitled to an instruction upon the defense of diminished capacity since the burden was upon him at that time to make this defense if he wished then to create this issue. (*People v. Lookadoo,* 66 Cal.2d 307, 316 [57 Cal.Rptr. 608, 425 P.2d 208].)

On our own motion we shall now examine whether the failure of appellant's counsel during the guilt phase of the trial to make the diminished capacity defense, rendered that portion of the trial fundamentally unfair to appellant within the meaning of *People v. Ibarra,* 60 Cal. 2d 460, 464-465 [34 Cal.Rptr. 863, 386 P.2d 487], in that "counsel's lack of diligence or competence reduced the trial to a 'farce or a sham' " (*Id.* at p. 464) or in that a crucial defense was withdrawn because of counsel's failure to investigate all defenses of fact and of law which might be available to his client. The short answer to this question would be that in view of the great doubt as to whether this defense was available in this case, the

action of appellant's counsel in not making it was completely justified. But we think the same answer can be reached by an examination of the tactical position in which appellant's counsel found himself.

Some two months before the trial appellant's counsel had been expressly apprised of the defense of diminished capacity and when the guilt phase of the trial started he apparently had seen the reports of both court-appointed psychiatrists on the insanity issue. From one of these it was apparent that there was some psychiatric testimony available in support of a claim that the battery was committed under a psychomotor epileptic seizure. But the final conclusions of both psychiatrists were otherwise.[6] During the People's case in the guilt phase of the trial, testimony was developed through cross-examination of various prosecution witnesses, as previously indicated, that the battery was provoked by the victim having picked on appellant. Provocation is a recognized (See Assault and Battery, 5 Cal.Jur.2d, § 14, p. 319), if not a particularly strong, defense to battery. In addition, appellant's counsel had in his possession the hereafter discussed minute order of the Los Angeles County Superior Court finding appellant insane as of October 5, 1965. If he used this comparatively weak psychiatric testimony in support of the claimed epileptic seizure during the guilt phase of the trial it would lose much of its impact on the jury during the insanity phase. Moreover, in that second stage he would have the help of the prior Los Angeles County Superior Court finding of insanity, which help would be unavailable in the first stage of the trial. Furthermore, provocation is an everyday experience which all jurors understand; inconclusive and somewhat obscure medical testimony about epileptic seizures is something else again.

Finally the apparent factual inconsistency of the two defenses of provocation and diminished capacity, while legally acceptable, obviously created a problem in jury persuasion. Under these circumstances, it seems to us that the failure of appellant's counsel to raise the diminished capacity defense during the guilt phase of the trial and to reserve it instead exclusively for the insanity phase of the trial, was in all probability a sound tactical decision and, as such, beyond

---

[6]One psychiatrist concluded on the basis of his first examination of appellant that he was legally insane at the time of the offense. However, after reexamination and obtaining more data on appellant's background, the case, etc., he changed his opinion to one of appellant's legal sanity at the time of the battery. Neither psychiatrist was the psychiatrist who changed his opinion in January 1966.

the reach of *Ibarra*. (Cf. *People* v. *Reeves*, 64 Cal.2d 766, 772-774 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Allison*, 245 Cal.App.2d 568, 575 [54 Cal.Rptr. 148].)

We shall now discuss appellant's various claims of error with respect to the insanity phase of the trial. First, appellant argues that the issue of appellant's insanity should not have been submitted to the jury because the trial court had before it, in the form of defendant's Exhibit I, prior to such submission, a certified copy of the aforementioned minute order of the Los Angeles County Superior Court in a robbery prosecution finding appellant insane at the time that offense was committed and that as of October 5, 1965, he had "not fully recovered his sanity." Appellent argues, as he did by motion before the trial court, that this finding of insanity, when coupled with the absence in the record of any certification pursuant to Penal Code section 1372 of restoration to sanity, brings into play the doctrine of collateral estoppel and that under such doctrine the issue of appellant's insanity on December 4, 1965, should not have been relitigated in this case. We disagree, and instead agree with the trial court's position that this doctrine does not apply in this case because the insanity issues in the two cases differed timewise by about two months. In other words, proof of insanity on October 5, 1965, is not conclusive proof of insanity on December 4, 1965. Furthermore, section 1372, which applies only to proceedings suspended for determination of sanity, has no application to the instant prosecution which was not so suspended.[7]

---

[7]Appellant was returned to the custody of the Ventura County sheriff from the Atascadero State Mental Hospital on October 29, 1965, for retrial of a Ventura County armed robbery case. (Ventura County Superior Court file No. CR 5903 added to the record on appeal pursuant to stipulation of counsel at oral argument, and rules 12(a) and 30, of Cal. Rules of Court.) Evidently no hearing was held before this transfer of appellant from Atascadero to the Ventura County jail, apparently because appellant was not then being released from confinement and the minimum period of confinement of 90 days in the state mental hospital prior to such a release hearing had not run. (See Pen. Code, §§ 1026, 1026a.)

On December 29, 1965, while being arraigned, he underwent an epileptic seizure in court. As a consequence, the court (a different judge than the one who subsequently tried appellant in this case) ordered, pursuant to Penal Code, section 1368, the initiation of sanity proceedings.

Two sanity hearings were thereafter held in January 1966, some two months before the trial before the judge who ordered such proceedings. At the conclusion of the first hearing the court, on the basis of the only psychiatric testimony taken, found that appellant was "not sufficiently presently sane to be able to cooperate with counsel" and ordered appellant returned to Atascadero. However, a week later a second sanity hearing was held on the unopposed motion of appellant's counsel and on

*(People* v. *Field,* 108 Cal. App. 2d 496, 498-500 [238 P.2d 1052], hear. den.)

Appellant's next contention is that the jury was erroneously instructed to appellant's prejudice during the insanity phase of the trial. More specifically, he asserts that the jury was incorrectly instructed as to who had the burden of proof on the issue of appellant's mental condition.

The trial court as part of its modified version of CALJIC 801 instructed the jury on this point as follows: ''The burden of proving insanity is on the defendant by a preponderance of the evidence.''[8]

The trial court then instructed the jury in accordance with CALJIC 808, as modified by him, as follows: ''Proof, if any, that the defendant, before the time when the crime in question was committed, was afflicted with permanent insanity, as distinguished from temporary or transient insanity, may create an inference of fact, that a thing once

the basis of the same psychiatrist's testimony after reexamination of appellant, the court set aside its prior order of commitment of appellant to Atascadero and found, contrary to its prior finding, that appellant was sane, understood the nature of the two cases pending against him, could cooperate with his counsel in regard thereto and could have a fair trial.

Furthermore, at the start of the trial in this case the court satisfied itself by specific inquiry of both appellant and his counsel that appellant's mental condition was such that he could stand trial.

[8]The instruction in full was as follows:

''The defendant has heretofore been found guilty of the offense of battery upon the person of a peace officer and it is now your function to determine the issue raised by the defendant's plea of 'not guilty by reason of insanity.' Such plea now places before you the issue as to whether or not he was sane or insane at the time of the commission of the offense. This is the sole issue for you to determine in this proceeding.

''Although you may consider evidence of his mental state before and after the time of the commission of the offense, such evidence is to be considered for the purpose of throwing light upon his mental condition as it was when the offense was committed.

''Insanity, as the word is used in these instructions, means a diseased or deranged condition of the mind which renders a person incapable of knowing or understanding the nature and quality of his act, or unable to distinguish right from wrong in relation to that act.

''The test of sanity is this: First, did the defendant have sufficient mental capacity to know and understand what he was doing, and second, did he know and understand that it was wrong and a violation of the rights of another? To be sane and thus responsible to the law for the act committed, the defendant must be able both to know and understand the nature and quality of his act and to distinguish between right and wrong at the time of the commission of the offense.

''The burden of proving insanity is on the defendant by a preponderance of the evidence.

''A preponderance of evidence is such evidence as, when weighed with that opposed to it, has more convincing force, and from which it results that the greater probability of truth lies therein.''

proved to exist continues as long as is usual with things of that nature. However, such proof of prior permanent insanity, if any, does not shift from the defendant the burden of proving insanity by a preponderance of the evidence.''

Appellant requested and was denied his modification of the aforementioned CALJIC 801 which was as follows: ''Evidence has been received in this case that the defendant was previously found to be insane and committed. A person committed as insane is presumed insane until his sanity is legally restored.''

''The effect of this presumption is to place on the prosecution the burden of proving the defendant sane by evidence that is conclusive.''

We believe in this phase of the case the trial judge correctly instructed the jury upon the law respecting appellant's mental condition except in one minor particular which possible error we find was not in any event prejudicial to appellant.

Normally, ''On the trial of the issue raised by a plea of not guilty by reason of insanity, there is a rebuttable presumption that defendant was sane at the time the crime was committed [Citations] and defendant has the burden of proving his insanity by a preponderance of the evidence [Citation].'' (*People* v. *Baker,* 42 Cal. 2d 550, 564 [268 P.2d 705].) But when there is proof that ''defendant was afflicted with a permanent insanity, as distinguished from a temporary or transient insanity, prior to the commission of the crime charged,'' the presumption of sanity is dispelled and there arises ''a presumption that his insanity continued to exist until the time of the commission of the crime.'' (*People* v. *Baker, supra.*) As the *Baker* case suggests at page 565, evidence of prior insanity does not remove from a defendant his burden of proof on the insanity issue. (See also, *People* v. *Wolff,* 61 Cal. 2d 795, 817 [40 Cal. Rptr. 271, 394 P.2d 959] ; Evid. Code, §§ 522, 500, 605 & Comments.) When the court there stated that the presumption of sanity is dispelled by proof of earlier, permanent insanity, and that there arises instead a presumption that the insanity continued, the term ''presumption'' was being used as defined in former Code of Civil Procedure, section 1959: ''A presumption is a deduction which the law expressly directs to be made from particular facts,'' (now replaced by Evid. Code, § 600 subd. (a)). As is explained in *People* v. *Wolff, supra,* all that was meant by such a statement was that there are two possible presumptions in the insanity situation. If the basic facts are such as to bring the general presumption

of sanity into play, then that is the presumption to be applied in the case. If instead in the basic facts there is evidence of prior permanent insanity, then the latter presumption (that the condition continued) applies. The jury is to be instructed on whichever of the presumptions properly applies, or more precisely, on the appropriate inference in the case. (See *People* v. *Wolff, supra,* at p. 818.) What a close reading of *Baker* and *Wolff* suggests is that CALJIC 801 and 808 should not be mechanically given together in the same case. ■ To avoid confusion on the points at issue in this case, the jury should be instructed in terms conveying essentially the point that the burden of proving insanity is on the defendant who must prove such defense by a preponderance of the evidence. (See also, Evid. Code, §§ 502 & 522; CALJIC 801 (1967 Rev.).) In other respects, the court should instruct on those presumptions or inferences which appear appropriate to the case—such as the presumption of sanity or the permissible inference that a condition established to have existed at one point in time continues as long as is usual with things of that nature. (See *People* v. *Wolff, supra,* at p. 818; Civ. Code, § 3547; former Code Civ. Proc., § 1963 subd. 32; CALJIC 801 & 808 (1967 ed.).) This is exactly what the trial court did in this case. Furthermore, its refusal of the erroneous instruction submitted by appellant was proper.

■ We believe, however, that the trial court may have erred in its above-quoted version of CALJIC 808 to the extent that it was therein indicated to the jury that proof of appellant's ''permanent''[9] insanity, as of October 5, 1965, might not have been established. Such proof existed in defendant's Exhibit 1, a certified copy of the aforementioned minute order of the Los Angeles County Superior Court.

We likewise think the prosecutor may have misstated the law as to the legal effect of this minute order in this case in his closing argument.[10] (See *People* v. *Beltran,* 94 Cal. App. 2d 197, 202-205 [210 P.2d 238] (res judicata doctrine in criminal cases); see also, Anno. 9 A.L.R. 3d 203.)

But such possible errors were not, in our opinion, prejudicial. We believe that the jury, on the evidence before it— particularly the testimony of both court-appointed psychia-

---

[9]Apparently the jury concluded that this ''permanent'' insanity no longer existed on December 4, 1965.

[10]The pertinent part of the closing argument, as set out in appellant's opening brief, was as follows:

''It has been suggested to you that the finding that the defendant was not guilty by reason of insanity in the Los Angeles case and because

trists that appellant was legally sane on December 4, 1965—in all reasonable probability would have reached the same verdict of sanity as of that date even had they been instructed that appellant had been proved permanently insane as of October 5, 1965, and had the prosecutor refrained from questioning this conclusion as he did in his oral argument. There was no miscarriage of justice resulting from these possible errors. (Cal. Const., art. VI, § 13; *People* v. *Watson,* 46 Cal. 2d 818, 836 [299 P.2d 243].)

The judgment is affirmed.

Ford, P. J., and, Moss, J., concurred.

---

the judge in that case found that his sanity was not restored, you must conclude, therefore, that it exists in this case. That is not true. This creates at most only an inference that if that condition truly did exist at that time, and we don't know surely that it did, then it would tend to continue to exist, but where you do have the facts and the information is with respect to the present situation, I ask you simply to use your good judgment and common sense in evaluating what you know concerning the present situation.''