[Crim. No. 14439.   Second Dist., Div. One.   Dec. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH DAVIS, Defendant and Appellant.

Albert I. Kaufman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and A. Barry Cappello, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of robbery and assault with intent to commit robbery.

In an information filed in Los Angeles on September 29,

1966, Ralph Davis (appellant) with Harry Princeton Henderson as a codefendant was charged in count 1 with robbing Donald Reid of certain personal property on August 8, 1966; in count 2 with robbing Oscar Bright of certain personal property on August 8, 1966; in count 3 with robbing George Blassingame of certain personal property on August 8, 1966; in count 4 with committing an assault upon Donald Reid with the intent by means of force to take personal property from the possession of Reid. It was further separately alleged in each count that defendants at the time of the commission of the respective offenses were armed with deadly weapons, namely, a pistol and a rifle.

In a jury trial Henderson was found guilty as charged; he appealed and the judgment was affirmed by this court. (*People* v. *Henderson,* 260 Cal.App.2d 94 [67 Cal.Rptr. 111], hearing before Supreme Court denied May 9, 1968.)

The jury failed to agree with reference to Davis (11 to 1 for conviction) and a mistrial was declared as to him. In the subsequent trial Davis was found to be guilty of robbery in the first degree and armed as charged and was sentenced to the state prison on counts 1, 2 and 3 for first degree robbery. Both a motion for a new trial and for probation were denied. The sentence as to count 4 was stayed pending an appeal as to count 1; if the judgment is affirmed in the appellate court, the stay as to count 4 is to become permanent. The sentences as to counts 1, 2 and 3 were ordered to run concurrently. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: Reid on August 8, 1966, had about $1,650 in cash in his possession and went to Dee's Cafe where in the course of events he invited George Blassingame and Oscar Bright to come to his home in the San Fernando area. Blassingame and Bright apparently accepted the invitation for they arrived at Reid's home at about 8:30 p.m. Reid and his two guests were about to have a drink when there was a knock at the front door. Reid went to answer the knock at the door and when he opened the door, the screen door was suddenly pulled open and two men wearing stockings over their heads, entered and told everyone to hit the floor. One of the men had a rifle and the other had a pistol. One said, ''This is a stickup. . . . We want what you got.'' Reid replied in effect that no one there had anything of value whereupon he was hit upon the side of his head. Blassingame and Bright supposedly buried their heads in the couch upon which they previously had been sitting. Their wallets were

taken against their will and from fear of the firearms held by the robbers. Blassingame heard someone groaning apparently from some violence which was being imposed. Bright saw blood on Reid's head.

Jean Lee, the 14-year-old stepdaughter of Reid, who was in the den watching television, heard blows and the sounds of a beating being inflicted; a man came into the den with a pistol in his hand and directed her out of the room. She stated that although Davis appeared shorter than the man she saw with the pistol, he did appear to be of the same weight and build as the man who pointed the gun at her. When she got to the doorway of the living room the man with the rifle swung around and fired the rifle into the floor, and said something to the effect that they meant business. When the two robbers left they admonished those in the Reid house not to get up for a few minutes.

During the course of the robbery Reid observed Davis going through Blassingame's and Bright's pockets.

On the day following the robbery, August 9, 1966, Davis purchased a new yellow 1966 GTO Le Mans automobile upon which he made a cash down-payment of about $480.

A witness who lived across the street from Reid stated that he saw two Negro men, between 8:30 and 9 p.m. on August 8, 1966, walk in front of a gray Plymouth car depicted in the exhibits in court as being a car formerly driven by Henderson and in which Henderson and Davis had been seen.

Reid apparently was reluctant to testify, since following the first trial he had received a telephone call and had been told, ''You shouldn't have done that to Henderson, because you are going to get it.'' Reid asked for police protection and indicated to the prosecutor that he would like to drop the charges against Davis. Reid frequently gave hazy or uncertain answers at the second trial and the prosecutor on several occasions used the transcript of his testimony taken at the previous trial and the transcript of his testimony taken at the preliminary examination, to freshen his memory and to inquire whether he had so testified. At the preliminary hearing and at the former trial the testimony of Reid was clear and positive that Davis was the robber with the pistol and that Henderson was the robber with the rifle. At the second trial Reid admitted that he had so testified at those times and that his memory was probably better then than at the time of the second trial.

Reid definitely approached certain officers and told them

that he was the victim of a robbery and that Davis was one of the robbers and that he (Davis) had just purchased a yellow automobile.

Appellant now asserts that there was no substantial evidence of identification and corroboration to warrant the conviction. We view the matter as an appellate court and apply the rules of *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259]; *People* v. *Lollis,* 177 Cal.App.2d 665, 670 [2 Cal.Rptr. 420].

Appellant places considerable reliance in *People* v. *Gould,* 54 Cal.2d 621, 631 [7 Cal.Rptr. 273, 354 P.2d 865] where the court said: ''An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime.''

In his brief appellant readily admits that there was positive identification of appellant by Reid as one of the robbers at the preliminary hearing and at the first trial.

Appellant ''concedes that the prior identification was admissible as independent evidence'' but argues that it was insufficient to sustain the judgment.

In *Gould, supra,* at pp. 626-627 and at p. 629, it is said: ''Evidence of an extrajudicial identification is admissible, not only to corroborate an identification made at the trial [citation], but as independent evidence of identity. Unlike other testimony that cannot be corroborated by proof of prior consistent statements unless it is first impeached [citations], evidence of an extrajudicial identification is admitted regardless of whether the testimonial identification is impeached, because the earlier identification has greater probative value than an identification made in the courtroom after the suggestions of others and the circumstances of the trial may have intervened to create a fancied recognition in the witness' mind. [Citations.] The failure of the witness to repeat the extrajudicial identification in court does not destroy its probative value, for such failure may be explained by loss of memory or other circumstances. The extrajudicial identification tends to connect the defendant with the crime, and the principal danger of admitting hearsay evidence is not present since the witness is available at the trial for cross-examination. [Citations.]

''. . . Testimony as to an extrajudicial admission is indirect evidence of the matter admitted because the jurors are called upon not only to believe what is said in court—that the admission was made—but to infer that the admission was

true. [Citation.] Thus such testimony is indirect evidence only because it is hearsay.'' The judgment in *Gould* was affirmed.

In the case at bench the applicability of section 1235 of the Evidence Code was discussed by counsel and court from time to time. In *People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111] section 1235 was declared to be unconstitutional. Clearly, however, the facts of *Johnson, supra,* are not the facts of this case. Here there was no violation of any right of confrontation by appellant. At the preliminary hearing he was represented by counsel. At the previous trial counsel for appellant thoroughly cross-examined Reid. Here there was earlier court testimony which was introduced and the witness was either cross-examined or the opportunity to so examine was available and appellant was represented by competent counsel. Here the reason for Reid's prior testimony is clear; he was robbed, battered and hospitalized by reason of the activities of Henderson and Davis; he received a threatening telephone call with reference to his testifying and the threat was sufficient to deter him from being thorough in his testimony at the second trial. No obstacle or curtailment of confrontation or cross-examination resulted in the previous court appearances where Reid testified.

The trier of fact observed the witnesses, heard the testimony and considered the inconsistencies. That trier of fact made the determination against appellant who incidentally never testified.

This court filed the hereinabove set forth as its opinion with reference to the cause on September 18, 1968, and affirmed the judgment. A petition for a rehearing was denied. Appellant petitioned the Supreme Court for a hearing setting forth therein in effect that the evidence was insufficient to support the judgment. Appellant made no contention in his brief in this court in the first instance that the judgment was erroneous because it provided that he was guilty of robbery in the first degree and that he was armed as alleged in the information; he made no such contention in his petition for a rehearing in this court and he made no such contention so far as we are able to ascertain in the petition for a hearing in the Supreme Court. The Supreme Court in any event granted appellant's petition for a hearing, transferred the cause to that court and then retransferred the matter to this court with directions ''after making appropriate modifications to the text of its opinion, to refile the same with'' the order which

appears at the conclusion of this opinion. We cannot change the facts nor can we change the course of what was done in the trial court. We previously and again here correctly set forth what occurred in the trial court and correctly recited and set forth the pertinent facts. We therefore make no modifications to the text of the opinion. We do however modify the judgment as directed.

"The judgment is modified by striking therefrom the findings that defendant was armed with deadly weapons within the meaning of Penal Code section 12022 at the times of the commissions of the offenses charged and found in counts 1, 2, 3 and 4. In all other respects the judgment is affirmed."

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1969. Peters, J., was of the opinion that the petition should be granted.