[Crim. No. 15050.   Second Dist., Div. Four.   Apr. 18, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT MANUEL RODRIGUEZ, Defendant and Appellant.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Megan Wagner, Deputy Attorney General, for Plaintiff and Respondent.

DUNN, J.—By information appellant was charged with five felonies: four counts of armed robbery in violation of Penal Code, section 211, and one count of assault with a deadly weapon with intent to commit murder in violation of Penal Code, section 217. The crimes were committed on different days within a three-week period in November, 1966, except that the robbery charged in count IV and the assault charged in count V were committed on the same day, though upon different victims. At his arraignment, January 23, 1967, appellant pled "not guilty" and "not guilty by reason of insanity", and the trial court appointed two alienists[1] to: (1) examine

---

[1]The court's minute order cited Penal Code, section 1027 and Evidence Code, section 730. Penal Code, section 1027 reads: "When a defendant pleads not guilty by reason of insanity the court must . . . appoint two . . . psychiatrists to examine the defendant and investigate his sanity. . . ."

Evidence Code, section 730 states: "When it appears to the court, at any time before or during the trial of an action, that expert evidence . . . may be required by the court or by any party to the action, the

appellant as to present sanity; (2) as to sanity at time of commission of the offenses; (3) as to whether appellant was mentallly ill within the meaning of Welfare and Institutions Code, section 5551; and (4) as to whether appellant could develop specific intent to commit the offenses charged.

On March 23, 1967, the court found appellant to be presently insane, suspended the criminal proceedings and ordered him committed to Atascadero State Hospital until certified to be sane (Pen. Code, §§ 1368, 1370, 1372). Three months later, he was certified to be sane and was returned to Los Angeles for further criminal proceedings. On August 30, 1967, his guilt trial began before a jury which found appellant guilty on all four counts of robbery and that he was armed at the time, fixing them in the first degree. Appellant was found not guilty on the fifth count of assault.

In September 1967 plaintiff's sanity trial (Pen. Code, § 1026) took place before the same jury and he was adjudged to be sane at the time he committed the robberies. Under Penal Code, section 1203.03, he was referred to a diagnostic facility of the Department of Corrections and was accepted there. Following the statutory 90-day period of confinement, appellant was returned to court for sentencing, receiving concurrent sentences on the four convictions. He appeals from such judgment, raising four points.

I. *Did The Trial Court Err In Not Ordering A Hearing On Appellant's Present Sanity Prior to Judgment And Sentencing?*

At the termination of the sanity phase of appellant's bifurcated trial, and after the trial judge set a date for probation and sentencing, appellant's trial counsel stated to the court: "It would seem appropriate, perhaps, to have a psychiatrist appointed to examine him [appellant] as to his condition *now* to aid in the sentencing of this defendant." (Italics added.) The court replied: "I think I would wait until the probation report was supplied to the Court because we do have the fact that this defendant was previously examined by various doctors in connection with various questions to be answered and, of course, their statements can be obtained by the probation department at the time set for the probation hearing and sentencing. . . ." In his brief, appellant chooses

court . . . may appoint one or more experts to investigate, to render a report . . . and to testify . . . relative to the fact or matter as to which such expert evidence . . . may be required. . . ."

to construe trial counsel's statement as a request "that a psychiatrist be appointed to examine . . . appellant as to his present condition," and argues that "for purposes of the appeal this request is being interpreted as a motion for a hearing on the question of the appellant's present sanity prior to judgment" (pursuant to Pen. Code, §§ 1367 and 1368).[2] After making the quoted statement appellant's counsel never brought up the matter again. At no time before judgment did appellant make a motion pursuant to Penal Code, section 1368 to have the court determine his present sanity and such a motion was never denied, there being none to rule on. In like manner, no motion against pronouncement of judgment was made pursuant to Penal Code, sections 1191, 1201.

Respondent correctly points out that, "Even assuming that appellant's counsel's request could be interpreted as a motion pursuant to Penal Code section 1368, there was nothing before the trial court to indicate that appellant was insane during the trial or at the time of judgment." During the trial appellant called four doctors to testify in his behalf. Not one of the doctors testified to appellant's mental condition at the time of trial, but only at times months beforehand, and a careful reading of the reporter's transcript fails to indicate appellant manifested symptoms during trial which should have raised in the court's mind any doubt of appellant's present sanity. Furthermore a certification of the sanity of appellant had been received from the Superintendent of Atascadero State Hospital shortly before the trial began.

Appellant relies on *People* v. *Pennington* (1967) 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942] and contends that it reached a new interpretation of Penal Code, section 1368, saying in his brief, ". . . if a defendant has presented sufficient evidence at his trial he is entitled to a hearing on present sanity as a matter of right under the due process clause." Appellant correctly recites the holding of the *Pennington* case but ignores its facts which clearly distinguish it from our case. In *Pennington,* the record disclosed that the defendant exhibited clear signs of mental instability during the proceedings and his attorney moved to suspend trial on that account

---

[2]Penal Code, section 1367. "A person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane."

Penal Code, section 1368. "If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial. . . ."

and to conduct a hearing pursuant to Penal Code, section 1368. In support of his motion counsel produced the affidavit of a clinical psychologist who had examined defendant and concluded he was then insane. A hearing was held and the same expert testified to his opinion that defendant was incapable of understanding the proceedings and of assisting counsel in his defense. No contrary testimony was introduced.

The facts of the present case do not fit within the framework of *Pennington*. (*People* v. *Hoxie* (1967) 252 Cal.App.2d 901, 917-918 [62 Cal.Rptr. 37].)

II. *Did The Trial Court Subject Appellant To Multiple Punishment As Prohibited By Penal Code Section 654?*

As noted, the jury found appellant guilty of four first degree robberies, also finding he was armed with a pistol at the time each was committed. Based upon the verdicts, the court entered a judgment reciting these jury findings[3] and ordered appellant to be imprisoned "for the term prescribed by law," the sentences on counts 1, 2, 3 and 4 to run concurrently.

Relying upon *People* v. *Sparks* (1967) 257 Cal.App.2d 306, 311-312 [64 Cal.Rptr. 682] and *In re Shull* (1944) 23 Cal.2d 745 [146 P.2d 417], appellant objects to the judgment as imposing double punishment for the same acts, prohibited by Penal Code, section 654. In their Respondent's Brief the prosecution first conceded the point. However, in a supplement, they reverse their position, pointing to the holding in *People* v. *Tarpley* (1968) 267 Cal.App.2d 852 [73 Cal.Rptr. 643]. We have carefully reviewed all authorities cited and have additionally reviewed *People* v. *Davis* (1968) 268 Cal. App.2d 23, 27 [73 Cal.Rptr. 653]. In that case is a recital that our Supreme Court reaffirmed its earlier position as announced *In re Shull, supra,* and *People* v. *Ford* (1964) 60 Cal.2d 772, 794 [36 Cal.Rptr. 620, 388 P.2d 892]. (See: Supreme Court minutes of November 13, 1968 found in 69 A.C. No. 16, at p. 4 of "Minutes." Also see: *People* v. *Sesser* (1969) 269 Cal.App.2d 707, 711-713 [75 Cal.Rptr. 297].)

Whatever merit there may be in the reasoning of the court as announced in *Tarpley* we must comply with the Supreme Court's ruling as announced in *People* v. *Davis*. The judgment must be corrected by striking therefrom the finding that defendant was armed at the time he committed the acts alleged in counts 1, 2, 3 and 4 of the information.

---

[3] ". . . which the jury found to be Robbery of the first degree and that defendant was armed as alleged."

III. *Was The Evidence Insufficient To Sustain The Jury's Verdicts Of "Guilty"?*

Pointing out that conviction of robbery requires the prosecution to prove specific intent, appellant urges us to find from the evidence, as a matter of law, that he had no such intent. In this respect, he relies upon claimed evidence of diminished capacity under the so-called *Wells-Gorshen* rule. (*People* v. *Wells* (1949) 33 Cal.2d 330, 346-347 [202 P.2d 53] ; *People* v. *Gorshen* (1959) 51 Cal.2d 716, 727-728 [336 P.2d 492].)

Penal Code section 20 requires a "unity of act and intent" to constitute a crime. Though the statutory definitions of robbery and first degree robbery (Pen. Code, §§ 211, 211a) fail to include any specific intent it has been held that a specific intent permanently to deprive another of his property is a necessary element of the crime (*People* v. *Butler* (1967) 65 Cal.2d 569, 572-573 [55 Cal.Rptr. 511, 421 P.2d 703] ; *People* v. *Ford* (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892]).

There is a question as to whether or not the principle of diminished capacity is available to negate specific intent or applies at all in other than homicide cases. (Generally discussing this, see : *People* v. *Hoxie, supra,* 252 Cal.App.2d pp. 911-916 ; *People* v. *Glover* (1967) 257 Cal.App.2d 502, 505-507 [65 Cal.Rptr. 219] ; *People* v. *Moore* (1968) 257 Cal.App.2d 740, 745-753 [65 Cal.Rptr. 450] ; *People* v. *Caylor* (1968) 259 Cal. App.2d 191, 202-206 [66 Cal.Rptr. 448] ; Guttmacher and Weihofen, Psychiatry and the Law, pp. 424-433 [W. W. Norton & Co., Inc., publishers, 1952] ; Comment, 27 So. Cal.L. Rev. 181 [1954] ; Weihofen and Overholser, *Mental Disorder Affecting the Degree of a Crime,* 56 Yale L.J. 959 [1947].) However, we need not attack that problem.

It is appellant's contention that the evidence establishes, without dispute and conclusively, that his capacity to form the specific intent was so diminished as to require a finding by the trial court, and this court, as a matter of law that such intent was absent. The evidence is not subject to this interpretation. Appellant introduced at the trial testimony of four medical doctors, three of whom specialized in psychiatry, the fourth being a general practitioner. Only one of these, Dr. Deering, had examined appellant to determine if he was capable of forming a specific intent to steal and his testimony was far from conclusive. It will be recalled the crimes occurred in November 1966. The doctor examined the appellant once, on

February 27, 1967. At this examination he found appellant then to be in such mental condition as to lead him to conclude he was "not able to form specific intent." Though he had been advised of the type of crimes committed he knew nothing of their circumstances. When such circumstances were related to him in hypothetical questioning at trial he stated it would appear appellant "had the capacity to form intent."

Beyond this, and without reciting the details, there was evidence describing the manner in which each crime of robbery was committed. Penal Code section 21 provides, in part, "The intent or intention is manifested by the circumstances connected with the offense . . . ." And specific intent to rob may be inferred from evidence of the circumstances (*People* v. *Jackson* (1963) 222 Cal.App.2d 296, 298 [35 Cal.Rptr. 38]; *People* v. *Gilbert* (1963) 214 Cal.App.2d 566 [29 Cal.Rptr. 640]).

Even if the testimony of Dr. Deering had been clear and explicit on the point, and even though no contrary opinion evidence was introduced by the prosecution, the trial court was not thereby required to accept as gospel the opinion of the expert. (Pen. Code, § 1127b.) ▮ If there is any evidence, be it opinion evidence or otherwise, that would justify a finding that the specific intent implicit in a verdict of guilt was present, an appellate court may not set it aside. ▮ Such finding is amply supported by the evidence in this case.

IV. *Did The Trial Court Improperly Instruct The Jury So As To Commit Prejudicial Error?*

▮ Appellant confuses in his brief the defense of insanity and the doctrine of diminished capacity. He argues both in the same breath, claiming jury instructions on the points were improper.

Penal Code section 1016 specifies the pleas available to a defendant and while the plea "not guilty by reason of insanity" is among them, there is no mention of diminished capacity. Evidence of diminished capacity is admissible under a plea of "not guilty," which is tantamount to a general denial. Statutory authority therefor is found in Penal Code, section 1020. Thus, in a criminal case, the prosecution must prove all elements of the crime charged beyond a reasonable doubt (Pen. Code, § 1096). In attempting to offset or rebut such evidence under his general denial, a defendant may offer any evidence legally relevant for that purpose. In contrast, the defense of insanity is an affirmative one and the burden of establishing it rests upon the defendant, whose burden is to

establish insanity by a preponderance of the evidence. (Evid. Code, §§ 522, 115; *People* v. *Daugherty* (1953) 40 Cal.2d 876, 898 [256 P.2d 911]).

Using CALJIC instruction No. 73-B (revised), the court properly defined for the jury the elements of diminished capacity, also instructing the jury concerning the burden upon the prosecution to establish all elements of its case beyond a reasonable doubt. Regarding diminished capacity, no burden at all was placed upon appellant, and correctly so. Appellant argues that diminished capacity is like a plea of insanity, and that the court should have instructed the jury to the effect that appellant must establish his diminished capacity only by the preponderance of evidence. As previously noted, appellant confuses the two principles.

In his brief, appellant states, ''The Court also erred in failing to instruct the jury re the presumption concerning insanity.'' Such claim is incorrect, however, as the record shows the court read to the jury CALJIC instruction No. 73 (revised), omitting therefrom only the last sentence of the first paragraph. That instruction concludes by saying, ''For the purposes of the issues now on trial, you must assume that the defendant was sane at the time of his alleged conduct which, it is charged, constituted the crime described in the information.'' This is a correct statement of the rule.[4]

In his brief appellant further states, ''When there is proof that a defendant was afflicted with a permanent insanity prior to the commission of the crime charged, the presumption of sanity is dispelled and there arises a presumption that his insanity continued to exist until the time of commission.'' Appellant makes no reference to the record and we cannot tell if he is referring to the guilt trial or the sanity trial. The record discloses, as noted, that at the guilt trial the court properly instructed the jury regarding the presumption of sanity.

At the sanity trial, the court properly gave the jury CALJIC instruction No. 801 (1967 revision) which placed on appellant the burden of proving his insanity, but only by a preponderance of evidence. No instruction was given and, it should be noted, none was requested by appellant to the effect

---

[4]Penal Code, section 1026 reads in part, ''When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed.'' And see: *People* v. *Wells, supra,* 33 Cal.2d, p. 350.

that there existed a presumption of insanity. Relying upon *People* v. *Glover* (1967) 257 Cal.App.2d 502 [65 Cal.Rptr. 219] and *People* v. *Wolff* (1964) 61 Cal.2d 795 [40 Cal.Rptr. 271, 394 P.2d 959] appellant claims this latter is a correct legal principle. We do not agree that such instruction should have been given (if requested) or, if given, that it would correctly instruct a jury. The principle formerly was stated in CALJIC No. 808 but in the 1967 revision thereof the editorial committee notes it has ". . . withdrawn its approval of this instruction. . . ." It rests such withdrawal upon *People* v. *Wolff, supra,* one of the cases relied upon by appellant. And indeed, we conclude *Wolff* does not support appellant's position (see the opinion at pp. 816-818 of 61 Cal.2d). In *Glover, supra,* the trial court modified old CALJIC No. 808 and the modified instruction was given partial approval by the upper court. However, in light of *Wolff,* and of the record in the present case, we fail to find any error on the part of the trial court.

The judgment is modified by striking from the judgment the finding that appellant was armed; in all other respects it is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.