[Crim. No. 647. Fifth Dist. Apr. 17, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. DONNIE RAY NICHOLS, Defendant and Appellant.

Kenneth M. Wells, Public Defender, and Michael S. Sands, Assistant Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and David L. Wasserman, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—A unanimous jury found Donnie Ray Nichols guilty of first degree robbery; in broad daylight the defendant held up the bartender of the Arcade Tavern in downtown Sacramento, and, at gunpoint, forced him to deliver approximately $100 from the cash register; the defendant did not wear a face covering or attempt to disguise himself in any way; he approached the bartender in the presence of witnesses and when he was asked what he would like he said, "Your money." He then calmly left the bar, walked a short distance, and was picked up by a confederate in a nearby alley and whisked away to Marysville in a green car; the defendant was later picked up and jailed by law enforcement officers in the latter town. The evidence, it seems to us, was clear and convincing—not only the People's account of the crime but the defense's awkward attempt to establish an alibi, which was so lacking in convincing quality that it tended to strengthen the case against the defendant.

Able defense counsel do not contend that the evidence in the case, if all of it were properly received, is insufficient to justify the conviction; they claim that constitutional rights exist in favor of the defendant in connection with the lineup which confirmed his identification, and, as a result, that the evidence of identification should not have been received at the trial; if this contention is sustained, they argue that there

would not be left sufficient evidence of identification to permit the conviction to stand. We do not believe that the point attempted to be made by the defense is sound for the reasons hereinafter stated.

The general objection to the evidence of identification is thus divided in appellant's opening brief: (1) it is claimed that defendant was deprived of effective representation by counsel at a lineup viewed by the witnesses, and (2) the in-court identifications of defendant were the product of the illegal lineup and, therefore, inadmissible. In our opinion, neither contention is correct. In order to permit a comprehensive and applicable assay of these contentions, it is necessary to review briefly the evidence received at the trial; in this connection, it is our duty to state such evidence most favorably to the respondent.

A man without mask or other disguise entered the Arcade Tavern at the corner of 9th and "J" Streets in Sacramento in the early afternoon of January 31, 1968. The bartender, Bruce Graham, was on duty and there were three patrons seated at the bar—an elderly man and a woman and a young lady named Sharon Adams. The young man who entered the tavern proceeded to a point near the cash register at the middle of the bar, pulled a gun, which, according to the witnesses, resembled the Luger pistol hereinafter referred to and forced the bartender to give him the paper money in the cash register, which approximated $100. The holdup man was cool during the whole incident, including his slow exit. After he had left, Sharon Adams stepped outside the barroom and looked down the street. She saw a man wearing a tan jacket a block away on "I" Street, and momentarily thought that he was the robber as the young man who held up the bar, according to her memory, had been wearing a tan jacket.

At that time of the day, Mrs. Edith Niblock was walking in a northerly direction on 9th Street between "J" and "I" Streets. She noted that a large, light-colored automobile suddenly swung into the alley between "J" and "I" Streets, and, at that moment, a young man ran past her and jumped into the car; Mrs. Niblock said that this apparent fugitive she thought was dressed in a dark jacket which may have been plaid. She noted the license number of the vehicle, and subsequently transmitted it to the Sacramento police department because of what she considered were the suspicious circumstances of her observation. She was quite sure of the automobile license number, except for one letter—a "Z." The

Sacramento Police Department talked by telephone with officers of the Marysville Police Department.

Around 10 o'clock that evening, Officer Reusser of the Marysville Police Department, while on patrol, observed a green Oldsmobile heading north on "E" Street in Marysville; the license number on the automobile corresponded to the one received earlier on a suspected vehicle; he followed the car while in radio contact with Marysville officers in other vehicles. As they approached the 10th Street bridge, the passenger in the vehicle, who later proved to be the defendant, threw an object out of the car; a Luger pistol was later found in that area; it was loaded and belonged to appellant's father; the vehicle was stopped on the bridge and the defendant and also the driver, Paul Satterfield, were placed under arrest and transferred to the Yuba County jail. The defendant later stated that he threw his father's Luger pistol, which cost approximately $90, out of the vehicle because he was aware that he was being followed by Marysville policemen, and he stated that, because his friend, the driver, had been convicted of a felony and was on parole, he feared that the finding of a loaded weapon in the car would cause the termination of Satterfield's parole period. Why he thought that he was being pursued by Marysville policemen or why he should think that possession of the weapon by him, if he were innocent, would prejudice Satterfield does not appear specifically in the record. It was later established that when Detective Walter Ford of the Sacramento Police Department received the license number of the escape car from Mrs. Niblock he checked it with the data in the department of motor vehicles and found that the automobile bearing that license number was registered to one Lowell Pounds of Marysville. In talking with a Yuba County deputy sheriff, Detective Ford ascertained that Pounds was a close associate of the defendant; at the trial, Lowell Pounds testified that he was a cousin of defendant.

The Sacramento police in the investigation showed several photographs to Graham, Mrs. Adams and Mrs. Niblock. Graham then stated that the picture of appellant shown to him bore a strong resemblance to the robber, and Mrs. Niblock also, tentatively, identified a photograph of appellant as the one who had escaped through the alley between "I" and "J" Streets.

A lineup on the evening of February 2, 1968, was held by arrangement of the Sacramento Police Department and the sheriff's office in Marysville for the purpose of attempting an

identification of the defendant by the three Sacramento witnesses. Learning of the arrangement, the defendant asked the judge at Marysville to appoint an attorney to view the lineup on behalf of the defendant, and the judge appointed Gene Ashburn, the attorney who was assistant public defender of Yuba County. Mr. Ashburn correctly deduced that, inasmuch as the crime had occurred in Sacramento County, he could not properly be chosen by a Yuba County judge to represent the defendant at the preliminary examination and the trial of the offense. He stated that he did not feel that the local court had the authority to require a Marysville member of the public defender's office to represent the defendant as his attorney in the litigation. However, he did go to the sheriff's office about 15 minutes before the lineup proceeded, and he talked with Mr. Nichols, told him that he could not be his attorney during the trial, and warned him not to tell him anything confidential that he should properly impart only to the attorney who would ultimately be appointed to represent him. He told Nichols that he was there because the local judge had ordered him to be present during the lineup. He did view the entire proceedings and later testified at the trial, out of the presence of the jury, concerning what happened at the lineup. Among other things, before the lineup proceeded, Nichols requested that another man be included in the seven-man lineup and this request was granted. Nichols also asked that he be given a pair of shoes prior to participating; Nichols said that all of the other men in the lineup wore black shoes and he had on only white socks. Although the defendant testified that shoes were not given him until after the lineup took place, there was a conflict of testimony on this subject as Officer Ford from the Sacramento Police Department said that Nichols' demand for a pair of black shoes was acceded to before the lineup occurred, and that he wore the same kind of black shoes as the others at the time the lineup proceeded. At the lineup, and at the trial, defendant was identified by the bartender, Graham, and Sharon Adams, but Mrs. Niblock did not make a positive identification there or at the trial.

The judge in Sacramento, having heard the entire evidence concerning what took place at the lineup, held that there was no constitutional error and that, within the meaning of the requirement that an attorney representing a defendant should be present at a lineup when demanded, the lawyer appointed to attend the lineup on behalf of appellant was his attorney for that special purpose. There is no contention on the part of

the prosecution, under the laws of the United States and of California, that a defendant, upon request by him, is not entitled to have an attorney present at any lineup that takes place prior to trials. This is the holding in the federal cases of *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed. 2d 1178, 87 S.Ct. 1951]; and in the state case of *People* v. *Caruso,* 68 Cal.2d 183, 184 [65 Cal.Rptr. 336, 436 P.2d 336].

But in the opinion in *United States* v. *Wade, supra,* 388 U.S. 218, 237, in footnote 27 [18 L.Ed.2d 1149, 1163-1164], it is said: ''Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage for the presence of the suspect's *own* counsel.'' This appeal tests the right envisaged by the United States Supreme Court in the above quoted footnote, and presents to us the question of whether when a qualified attorney is appointed by a local judge where a lineup is about to take place, and who is present throughout the lineup, as here, and it is proven that such proceeding is conducted fairly and in accordance with law, the trial judge may properly find that the constitutional right of the defendant has been complied with. We hold that this may be done. Consequently, the specific in-court identification of the defendant by the witnesses who testified that the defendant was the person who robbed the Arcade Tavern on the date charged was not improper.

The appellant also points out that because the judgment not only found that the defendant was guilty of robbery in the first degree but also that he was armed with a dangerous weapon the sentence that must be served by the defendant is unfairly complicated. It is only just, and in accordance with the law of this state, that the judgment be modified by striking therefrom the finding that the defendant was armed with a deadly weapon as alleged within the meaning of Penal Code section 12022 in order to avoid double punishment (*People* v. *Sesser,* 2d Crim. 14863, Div. 1, Dec. 24, 1968, Minutes of the Supreme Court [269 Cal.App.2d 707 (75 Cal.Rptr. 297)]; *People* v. *Davis,* 2d Crim. 14439, Div. 1, Nov. 13, 1968. Minutes of the Supreme Court [268 Cal.App.2d 23 (73 Cal.Rptr. 653]). The judgment is modified by striking therefrom the finding that defendant was armed with a deadly weapon as alleged within the meaning of Penal Code section 12022; otherwise the judgment is affirmed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied May 15, 1969, and appellant's petition for a hearing by the Supreme Court was denied June 11, 1969. Peters, J., was of the opinion that the petition should be granted.