[No. A048136. First Dist., Div. Three. Apr. 20, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY RENE WIMBERLY, Defendant and Appellant.

## COUNSEL

Thomas Lundy, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, and Joanne Abelson and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CHIN, J.—Anthony Rene Wimberly appeals from his convictions on one count of rape (Pen. Code, § 261, former subd. (2) [now subd. (a)(2)][1] ), two counts of attempted murder (§§ 664/187), three counts of residential burglary (§ 459), one count of nonresidential burglary (§ 459), five counts of robbery (§ 211, former § 213.5), and four counts of being an ex-felon in possession of a handgun (§ 12021), with enhancements for firearm use, infliction of great bodily injury, service of prior prison terms, and a prior robbery conviction. He raises a variety of challenges to his convictions. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

By information, the Alameda County District Attorney charged appellant with three counts of special circumstance murder, two counts of attempted

---

[1]All further statutory references are to the Penal Code.

murder, three counts of residential burglary, one count of nonresidential burglary, five counts of robbery, two counts of rape, and four counts of being an ex-felon in possession of a gun. The information also alleged enhancements for use of a firearm, great bodily injury, service of prior prison terms, and a prior robbery conviction. The charges arose from four separate incidents involving five victims between November 8, 1984, and January 31, 1985.[2]

Appellant's trial began in February 1989. During jury selection, the trial court overruled appellant's objection that the prosecution was impermissibly excluding prospective jurors on the basis of race. Over defense objection, the evidence at trial included appellant's statements to the police after his arrest and the testimony of two of the victims who had identified appellant before trial from photographs and a lineup. Appellant's defense consisted primarily of expert testimony from Dr. David Stein, a psychologist, who testified that appellant's attachment to his mother affected the reliability of his statements to the police. The jury found appellant guilty on all counts except one of the rape counts and found true the various enhancements. It did not reach a verdict on the penalty phase of the trial. Accordingly, the trial court imposed a sentence of 40 years and judgment on the noncapital charges. Appellant then filed this timely appeal from the judgment on the noncapital convictions.

## DISCUSSION

### Jury Selection

Appellant contends that the trial court erred in failing to find a prima facie showing that the prosecution impermissibly used peremptory challenges to remove prospective jurors simply because they were the same race (Black) as appellant. We disagree.

To establish a prima facie case under *People* v. *Wheeler* (1978) 22 Cal.3d 258, 280 [148 Cal.Rptr. 890, 583 P.2d 748], a defendant alleging improper exclusion should make as complete a record of the circumstances as is feasible and must establish (1) that the excluded persons are members of a cognizable group, and (2) "a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (*Ibid.*) The focus of the prima facie inquiry "is on the objecting party's contentions and the record. The burden is upon the objecting party; justifications by the other side are not yet appropriate." (*People* v. *Granillo* (1987) 197 Cal.App.3d 110, 122 [242 Cal.Rptr. 639].)

---

[2]Since none of appellant's claims relate to the sufficiency of the evidence, it is unnecessary to recite the details of his crimes.

The determination of whether a defendant has established a prima facie case "is largely within the province of the trial court whose decision is subject only to limited review. [Citations.]" (*People* v. *Allen* (1989) 212 Cal.App.3d 306, 313 [260 Cal.Rptr. 463].) On appeal, we examine the entire record of voir dire for evidence to support the trial court's ruling. (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1155 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) Because of the trial judge's knowledge of local conditions and local prosecutors, powers of observation, understanding of trial techniques, and judicial experience, we must give "considerable deference" to the determination that appellant failed to establish a prima facie case of improper exclusion. (*People* v. *Sanders* (1990) 51 Cal.3d 471, 501 [273 Cal.Rptr. 537, 797 P.2d 561].)

■■■ In this case, after establishing that the prosecution had used two peremptory challenges to strike Black prospective jurors, appellant's counsel stated that he had "reason to believe that this is a pattern prohibited under the Wheeler case. And, therefore, I object to the challenge on that ground." The court asked if defense counsel had any other foundation for his objection, and counsel replied: "I would note that by my count that the, as I recall, six other jurors of the Black race have disappeared by virtue of various challenges prior to this point. The pool of Black jurors is exceedingly small in this panel. So I felt constrained to bring this to the Court's attention to [*sic*] the earliest possible moment with respect to the exercise of premptories [*sic*]. I believe it's incumbent on [the prosecution] to explain the exercise of the challenge." The trial court denied appellant's motion for failure to establish a prima facie case. The final jury included one Black juror.

As have courts facing similar showings, we find that the trial court did not err in ruling that appellant failed to make a prima facie case. In *People* v. *Rousseau* (1982) 129 Cal.App.3d 526 [179 Cal.Rptr. 892], the prosecution used peremptory challenges to strike the only two Blacks in the jury panel. On appeal, Division Four of this district noted that the defendant's attempt to make a prima facie case of improper exclusion "was limited to his statement that 'there were only two blacks on the whole panel, and they were both challenged by the district attorney . . . ,'" and found that this statement "was not a prima facie showing of systematic exclusion." (*Id.*, at p. 536.) Following *Rousseau*, the Supreme Court in *People* v. *Wright* (1990) 52 Cal.3d 367, 399 [276 Cal.Rptr. 731, 802 P.2d 221], found that the defendant failed to establish a prima facie case "solely by his observation that one prospective juror peremptorily challenged by the prosecutor was Black." Similarly, in *People* v. *Howard, supra,* 1 Cal.4th at page 1154, the Supreme Court found the defendant's showing "completely inadequate" where he showed only "that the prosecutor had challenged the only two Black prospective jurors." We likewise find that appellant's brief explanation of the

basis of his objection failed to establish a prima facie case. (See also *People v. Harvey* (1984) 163 Cal.App.3d 90, 110-111 [208 Cal.Rptr. 910] [exclusion of two Blacks does not alone establish a prima facie case, especially where one Black remains on jury].)[3]

We reject appellant's argument that the prosecutor's explanations for challenging prospective juror Willie G. "in and of themselves provide evidence of racial motivation because they are obvious mischaracterizations of the actual voir dire of the juror." The prosecutor did *not* explain his reasons for striking Willie G., but simply responded to the trial court's request for identifying facts that would enable it to remember him. The court expressly prevented the prosecutor from explaining his reasons for striking Willie G.[4] Nor did the prosecutor mischaracterize Willie G.'s voir dire as appellant contends. The prosecutor directed the trial court's attention to a page of Willie G.'s voir dire that "particularly stated that he was against capital punishment." In fact, on the cited page, Willie G. stated: "I'm against capital punishment." In response to the trial court's request for identifying information, the prosecutor also straightforwardly responded that Willie G. "was once represented by the Public Defender according to the corpus printout; and he, when I asked him a question if he had ever been represented by the Public Defender, he said no." This statement accurately reflects Willie G.'s voir dire.

We also reject appellant's argument that a comparison of Willie G. and jurors whom the prosecution did not strike establishes a racial motivation for the strike. The Supreme Court has held that such a comparison is inappropriate because it "does not properly take into account the variety of factors and considerations that go into a lawyer's decision to select certain jurors while challenging others that appear to be similar." (*People v. Johnson* (1989) 47 Cal.3d 1194, 1220 [255 Cal.Rptr. 569, 767 P.2d 1047]; see also *People v. Fuentes* (1991) 54 Cal.3d 707, 714-715 [286 Cal.Rptr. 792, 818

---

[3]Appellant correctly argues that the case law does not establish an arbitrary number of peremptory challenges that the prosecution must make before a defendant can show a prima facie case. However, courts have construed *Rousseau* and *Harvey* as establishing a rule that a defendant fails to make a prima facie case by showing *only* that the prosecution used peremptory challenges against two Blacks. (See *People v. Turner* (1986) 42 Cal.3d 711, 719, fn. 4 [230 Cal.Rptr. 656, 726 P.2d 102] and accompanying text; *People v. Christopher* (1991) 1 Cal.App.4th 666, 673 [2 Cal.Rptr.2d 69]; *People v. Fuller* (1982) 136 Cal.App.3d 403, 410 [186 Cal.Rptr. 283].)

[4]After stating identifying facts, the prosecutor began to explain that he "didn't like the juror because—" The court interrupted the prosecutor's explanation, stating: "I'm not asking you for an explanation why you excused the juror. The issue which is before me is whether there is sufficient basis for the prima facie showing to have you ask for me to ask that."

P.2d 75].) Thus, appellant's reliance on the prosecution's failure to strike other jurors is unavailing.[5]

■ Finally, we find that the record amply " 'suggests grounds upon which the prosecutor might reasonably have challenged' the jurors in question . . . . [Citation.]" (*People* v. *Howard, supra,* 1 Cal.4th at p. 1155.) As we have previously stated, prospective juror Willie G. declared during voir dire: "I'm against capital punishment." Similarly, when the court questioned Alrena W. regarding her feelings about the death penalty, she replied: "Well, I don't think I would feel for the death penalty." Upon the prosecution's further inquiry, she stated: "Now, I would feel like it's impossible for me, I wouldn't want to impose the death penalty on no one because it doesn't—it doesn't bring the people back." Both jurors also stated that they could, in fact, impose the death penalty depending upon the circumstances. However, these statements "merely ruled out a challenge for cause; they did not preclude concern that the jurors were predisposed against the death penalty." (*People* v. *Johnson, supra,* 47 Cal.3d at pp. 1218-1219, fn. omitted.) "The trial judge, who presided over the entire voir dire, was in a good position to decide from all the relevant circumstances whether there was a 'strong likelihood' that the prosecutor had challenged [Alrena W. and Willie G.] solely because of their group association. [Citation.] . . . Considering all of the relevant circumstances [citation], we cannot conclude from this record that the trial court erred." (*People* v. *Howard, supra,* 1 Cal.4th at p. 1156, fn. omitted.) Therefore, we reject appellant's *Wheeler* challenge.

### Right to Counsel at Lineup

■ Appellant next complains that the police violated his right to counsel at the preindictment lineup by failing to advise him of his right to counsel of his choice. He contends that, notwithstanding appointed counsel's presence at the lineup, we must reverse and remand to the trial court for a hearing on whether the victims who attended the lineup had independent bases for their identifications.

We reject appellant's argument because we find that appointed counsel's presence and representation of appellant at the lineup satisfies constitutional requirements. The United States Supreme Court established a right to the presence of counsel at postindictment lineups in *United States* v. *Wade*

---

[5]We also note that, in *People* v. *King* (1987) 195 Cal.App.3d 923, 934 [241 Cal.Rptr. 189], the court refused to consider an argument similar to appellant's, finding that it could not use evidence of subsequent events—the failure to strike other jurors—to evaluate earlier decisions of the trial court.

(1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]. *Wade* left open "the question whether the presence of substitute counsel might not suffice where notification and presence of the suspect's own counsel would result in prejudicial delay." (*Id.*, at p. 237 [18 L.Ed.2d at p. 1163], fn. omitted.) In a footnote, the court explained that, "[a]lthough the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified on the ground that the substitute counsel's presence may eliminate the hazards which render the lineup a critical stage for the presence of the suspect's *own* counsel." (*Id.*, at p. 237, fn. 27 [18 L.Ed.2d at pp. 1163-1164], original italics.)

After quoting this statement from *Wade*, the court in *People* v. *Nichols* (1969) 272 Cal.App.2d 59, 64 [76 Cal.Rptr. 846], held that there is no violation of a defendant's constitutional right "when a qualified attorney is appointed by a local judge where a lineup is about to take place, . . . is present throughout the lineup, . . . and it is proven that such proceeding is conducted fairly and in accordance with law . . . ." Thus, the court rejected defendant's argument that his constitutional rights were violated where a court-appointed public defender, after advising defendant that he could not be trial counsel, attended a lineup on defendant's behalf. (*Id.*, at pp. 63-64.) Similarly, in *People* v. *Hatfield* (1969) 273 Cal.App.2d 745, 748 [78 Cal.Rptr. 805], where defendants contended that the public defender's failure to confer with them prior to the lineup or participate in the conduct or selection of the other men in the lineup failed to satisfy *Wade*'s requirements, this court held that the defendants' right under *Wade* "to the presence of counsel" at a lineup "was fulfilled by the public defender's attendance."[6] Similarly, we find here that appointed counsel's attendance at the lineup on appellant's behalf satisfied appellant's right to counsel.[7]

Our conclusion is consistent with the California Supreme Court's explanation of the "limited role" counsel plays at a lineup. (*People* v. *Bustamante*

[6]In his concurring opinion in *People* v. *Chojnacky* (1973) 8 Cal.3d 759, 768 [106 Cal.Rptr. 106, 505 P.2d 530], Justice Mosk cited *Hatfield* in finding that counsel's actual presence at a lineup satisfied constitutional requirements and that counsel's "inability to consult with defendant prior to the lineup could in no way affect the basic fairness of the procedure or his observation thereof."

[7]In *Nichols*, defendant asked the judge to appoint an attorney. (*People* v. *Nichols, supra*, 272 Cal.App.2d at p. 63.) In *Hatfield*, the public defender was contacted after defendants were informed of their right to have an attorney present at the lineup and that an attorney would be provided if they did not have one. (*People* v. *Hatfield, supra*, 273 Cal.App.2d at p. 747.) We do not find these distinctions significant. What is significant is that appointed counsel attended the lineup on appellant's behalf. Other courts have found no constitutional violation in similar circumstances. (See *Metoyer* v. *State* (Okla.Crim.App. 1975) 538 P.2d 1066, 1069; *In re Jackson* (1973) 46 Mich.App. 764 [208 N.W.2d 526, 530]; *United States* v. *Neverson* (D.C. Cir. 1972) 463 F.2d 1224, 1227, fn. 4 [150 App.D.C. 133]; *United States* v. *Queen* (D.C. Cir. 1970) 435 F.2d 66, 67 [140 App.D.C. 262].) Appellant's counsel has not cited, and our own research has failed to reveal, a single case finding constitutional error where a defendant

(1981) 30 Cal.3d 88, 99 [177 Cal.Rptr. 576, 634 P.2d 927].) " '. . . At most, defense counsel is merely present at the lineup to silently observe and to later recall his observations for purposes of cross-examination or to act in the capacity of a witness. . . .' " (*Id.*, at p. 99, fn. 7.) Given this limited role, and the fact that a lineup may proceed in the absence of counsel under certain exigent circumstances (*id.*, at pp. 101-102, fn. 9 and accompanying text), we find appointed counsel's attendance at the lineup on appellant's behalf consistent with constitutional requirements.

### Limitation on Expert Testimony Regarding Confession

■ At trial, Dr. David Stein offered expert testimony regarding the effect of appellant's relationship with his mother on his confession. Appellant contends that the trial court prejudicially erred in refusing to allow Dr. Stein to answer the following questions: (1) "Did your evaluation of [appellant] in the context of the information and the total body of data that you've evaluated, reveal the existence of psychological pressures on [appellant] which would operate to have him, in effect, as you have already testified, give the police what they wanted to hear?"[8] (2) "Assuming that that dynamic is operating, could it be sufficient to cause someone in [appellant's] position to say things that were both against his interest and not true?" (3) "Did you form an opinion in this case as to whether or not that factor was operating on [appellant] during the interrogation?" (4) "Did your evaluation of [appellant] in this connection, in connection with the interrogation conducted by police in February of '85, yield any information which was inconsistent with the notion that the sensitivity to his mother affected the reliability of the information given in response to his interrogation?"

The simple answer to appellant's contention is that the court admitted testimony from Dr. Stein that adequately covered these areas, and, therefore, any error is harmless. (See *Majetich* v. *Westin* (1969) 276 Cal.App.2d 216, 219 [80 Cal.Rptr. 787].) Dr. Stein testified in part to the following: (1) that the material he had reviewed "makes a very strong case for the fact that [appellant] *had* an unusually complicated and difficult and strong attachment to his mother *which influenced much of his behavior . . .* ," and which "[*d*]*id* . . . play a role in [appellant's] response to the police interrogation that took place in February of 1985"; (2) that appellant "*was concerned* [about his mother's situation] on a number of counts"; (3) that appellant's "assumption

was not advised that he could obtain counsel of choice but was in fact represented by counsel at a lineup.

[8]After counsel rephrased the question to ask whether the data showed psychological factors that *could,* as opposed to would, operate to the same effect, the court permitted Dr. Stein to answer.

that [his mother] was in the police station *had a profound cumulative effect as the day wore on*"; (4) that, given this assumption, appellant *"would be really primed to do whatever he could* to protect his mother and do what he believed would be in her best interests"; (5) that appellant's desire to help his mother "certainly could influence what he would say . . . ," and, as a result of his desire, "he *would be* more inclined to try to, quote, give the officers what they wanted to hear"; (6) that appellant's sensitivity to his mother's situation, coupled with his belief that the police were interrogating her, "*would . . .* be sufficient to cause [appellant] to say things against his interest"; and (7) that appellant's prolonged isolation during the interrogation and the police's failure to tell him about the fate of his mother "*had* psychological significance . . . ." (Italics added.) Given this record, it is not reasonably probable that appellant would have obtained a more favorable result had the trial court permitted Dr. Stein to answer the questions at issue. Therefore, any error was harmless.[9]

### Admission of Appellant's Confession

■ Appellant next attacks the trial court's denial of his motion to exclude his confession. He contends that his "strong attachment to his mother and the desire to assure she was alright was the 'motivating cause' of his incriminating statements. . . . Therefore, the confession should have been excluded as involuntary."

■ To obtain admission of a confession, the prosecution must prove by a preponderance of the evidence that the confession was voluntary.[10] (*People v. Kelly* (1990) 51 Cal.3d 931, 947 [275 Cal.Rptr. 160, 800 P.2d 516].) If there is conflicting evidence, we must on appeal "accept that version of events which is most favorable to the People, to the extent supported by the record. [Citation.]" (*People v. Anderson* (1990) 52 Cal.3d 453, 470 [276 Cal.Rptr. 356, 801 P.2d 1107].) If the facts are uncontradicted, we independently review whether the trial court properly found that the confession was voluntary. (*Ibid.*)

■ We uphold the trial court's conclusion that appellant voluntarily confessed because there is no evidence that he was subject to any improper coercion regarding his mother. If the police do not, either expressly or impliedly, threaten to arrest or punish a close relative or promise to free a relative in exchange for a confession, "a suspect's belief that his cooperation

---

[9]In light of our finding, we need not resolve whether the court's ruling was error.

[10]Appellant incorrectly asserts that the prosecution must prove voluntariness beyond a reasonable doubt. This standard applies only to offenses committed prior to the 1982 adoption of Proposition 8. (*People v. Markham* (1989) 49 Cal.3d 63, 65 [260 Cal.Rptr. 273, 775 P.2d 1042].) The offenses at issue here occurred in 1984 and 1985.

will benefit a relative will not invalidate an admission. [Citations.]" (*People v. Steger* (1976) 16 Cal.3d 539, 550 [128 Cal.Rptr. 161, 546 P.2d 665, 83 A.L.R.3d 1206].) According to appellant, the police told him that his mother "was in the other room," quoted to him something she (or his fiancée) had said, and told him that he could see her when he was finished. By appellant's own admission, the police did not state that they had arrested his mother, that she was in custody, or that they would release her if he confessed.[11] According to appellant, he "was thinking at the time that [his] mother might be in custody, that if [he] would tell them what they wanted to hear, that they would let [her] . . . go." The record thus clearly establishes that the police made no express or implied threat and that any desire of appellant's to aid his mother by confessing "was entirely self-motivated." (*Ibid.*) Therefore, we conclude that his confession was voluntary. (See *People v. Boggs* (1967) 255 Cal.App.2d 693, 700-701 [63 Cal.Rptr. 430] [confession to aid wife, who had come to police station voluntarily, found voluntary]; *People v. Jackson* (1971) 19 Cal.App.3d 95, 99-101 [96 Cal.Rptr. 414] [confession because of concern over wife's health found voluntary]; *United States v. McShane* (9th Cir. 1972) 462 F.2d 5, 6-8 [confession because of concern over health of girlfriend, whom police had taken to station for questioning after defendant's arrest, found voluntary].)

### Pretrial Identification Procedures

■ Appellant argues that certain pretrial identification procedures were impermissibly suggestive. ■ A pretrial identification procedure violates a defendant's due process rights if it is so impermissibly suggestive that it creates a very substantial likelihood of irreparable misidentification. (*People v. Blair* (1979) 25 Cal.3d 640, 659 [159 Cal.Rptr. 818, 602 P.2d 738].) The defendant bears the burden of proving that the procedure resulted in such unfairness that it infringed the right to due process. (*People v. Perkins* (1986) 184 Cal.App.3d 583, 589 [229 Cal.Rptr. 219].) On appeal, we review the totality of the circumstances in determining whether an identification procedure was unconstitutionally suggestive. (*Id.*, at pp. 588-589.) We must resolve all evidentiary conflicts in favor of the trial court's finding and uphold that finding if substantial evidence supports it. (*Id.*, at p. 589.)

■ Each of appellant's specific challenges to the identification procedures in this case fails under existing California authority. Appellant first complains that two of the victims identified him in a lineup two days after viewing photographs. However, in *People v. Blair, supra*, 25 Cal.3d at pages 659-660, the Supreme Court rejected the argument that the use of photographs for identification prior to a lineup was impermissibly suggestive. (See

---

[11]The testimony shows that appellant's mother voluntarily came to the police station and that the police did not arrest or handcuff her.

also *People* v. *Perkins*, *supra*, 184 Cal.App.3d 583 [upholding validity of lineup identification made two days after witness viewed photographs]; *People* v. *Spencer* (1972) 22 Cal.App.3d 786, 792, 795-796 [99 Cal.Rptr. 681] [upholding validity of lineup identification made one week after witness viewed photographs].) Therefore, we reject appellant's claim.

Appellant next complains that the police included appellant's picture in each of two sets of photographs that they showed one of the victims. However, the Supreme Court in *Blair* rejected a similar argument where the police showed a witness four sets of photographs, three of which contained the defendant's picture. (*People* v. *Blair*, *supra*, 25 Cal.3d at pp. 660-661.) Similarly, Division Two of this district has held that a set of photographs containing two pictures of the defendant is not impermissibly suggestive. (*People* v. *Holt* (1972) 28 Cal.App.3d 343, 349 [104 Cal.Rptr. 572], disapproved on other grounds in *Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 625, fn. 6 [114 Cal.Rptr. 121, 522 P.2d 681] and accompanying text.) Finally, California and federal courts have rejected the argument that identification procedures are impermissibly suggestive if the defendant is the only person appearing in both a display of photographs and a subsequent lineup. (*People* v. *Spencer*, *supra*, 22 Cal.App.3d at pp. 795-796; *United States* v. *Davenport* (9th Cir. 1985) 753 F.2d 1460, 1463.) Given these decisions, we reject appellant's claim.

Appellant next complains that the police conducted a lineup only 90 minutes after conducting a " 'jewelry lineup' " during which one victim and the parents of another victim identified property. He argues that this procedure led the victims to expect that the person whose photograph they had earlier selected would be in the lineup and suggested that the police had other evidence that one of the persons in the lineup committed the crime. However, since, as we have just explained, it is permissible to hold a lineup shortly after a witness has identified a suspect from a display of photographs, a fortiori, it is permissible to hold a lineup shortly after a jewelry display, which does not involve the viewing of a defendant. Moreover, in *People* v. *Ballard* (1969) 1 Cal.App.3d 602, 605 [81 Cal.Rptr. 742], the court upheld a lineup identification where the police told the witness that they had two suspects who fit the description the witness had given them. (See also *People* v. *Meneley* (1972) 29 Cal.App.3d 41, 57 [105 Cal.Rptr. 432] [upholding lineup identification where police told witness the suspect would be in the lineup].) Therefore, we reject appellant's claim.

Finally, appellant complains that, in a number of respects, the lineup placed undue emphasis on him. He argues that he and the other participants

in the lineup significantly differed physically.[12] However, "there is no requirement that a defendant in a lineup be surrounded by people nearly identical in appearance [citations] . . . ." (*People* v. *Sequeira* (1981) 126 Cal.App.3d 1, 16 [179 Cal.Rptr. 249], disapproved on another ground in *People* v. *Magill* (1986) 41 Cal.3d 777, 780 [224 Cal.Rptr. 702, 715 P.2d 662].) Thus, courts have upheld lineup identifications despite the existence of similar or greater disparities among the lineup participants. (E.g., *People* v. *Blair, supra*, 25 Cal.3d at p. 661 [upholding identification where defendant was at least seven years older and thirty-seven pounds heavier than anyone else].) Appellant also argues that, contrary to the procedures the police announced at the beginning of the lineup, the police asked only him "to *repeat* all of the words the suspect had used, and to try on a pair of glasses again . . . ." However, the police made this request only because appellant had spoken too softly and did not put the glasses on properly. Thus, the request did not render the identification improper. (See *People* v. *Boyd* (1990) 222 Cal.App.3d 541, 574 [271 Cal.Rptr. 738] [a defendant may not challenge a lineup "when his own conduct has caused the procedure to be suggestive"]; *U.S.* v. *Jones* (4th Cir. 1990) 907 F.2d 456, 459-460 [upholding lineup identification where defendant asked to repeat phrase only because he had spoken softly the first time].) Finally, appellant notes that he was wearing "a bright white sweatshirt [*sic*] or sweater." However, so long as the defendant is not alone dressed in a "striking" manner, "[t]here [is] no need for the police to match the outfits of everyone in the lineup anymore than the police [are] required to match the physical proportions of the other men with scientific exactitude." (*People* v. *Floyd* (1970) 1 Cal.3d 694, 713 [83 Cal.Rptr. 608 [464 P.2d 64], disapproved on another ground in *People* v. *Wheeler, supra*, 22 Cal.3d at p. 287, fn. 36.) In *People* v. *Lewis* (1977) 75 Cal.App.3d 513, 518 [142 Cal.Rptr. 218], the court rejected defendant's argument that a set of photographs was impermissibly suggestive because defendant alone wore a white tank T-shirt. Similarly, we reject appellant's argument that the lineup was impermissibly suggestive because he wore a white sweat shirt or sweater.

### Failure to Record Entire Interrogation

Appellant next contends that the police's failure to record the entire interrogation violated his due process rights under the 14th Amendment to the United States Constitution. Therefore, he contends, the trial court should have excluded his confession.

---

[12]At the time of the lineup, appellant was 6 feet tall, weighed 175 pounds, and was 22 years old. The respective heights, weights, and ages of the other 5 participants were as follows: (1) 5 feet, 11 inches; 144 pounds; 29 years; (2) 5 feet, 9 inches; 160 pounds; 19 years; (3) 5 feet, 8 inches; 140 pounds; 24 years; (4) 5 feet, 11 inches; 170 pounds; 18 years; and (5) 6 feet, 0 inches; 170 pounds; 22 years.

Appellant's claim fails under well-established California authority. As appellant correctly concedes, the California courts have held that the police have no duty to tape-record a defendant's interrogation. (See *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 755, fn. 17 [175 Cal.Rptr. 738, 631 P.2d 446].) This result derives from the rule that "[t]he police have no obligation to collect evidence for the defense; their duty is to preserve existing material evidence . . . . [Citation.]" (*People* v. *Kelley* (1984) 158 Cal.App.3d 1085, 1101-1102 [205 Cal.Rptr. 283].) Following this rule, the court in *People* v. *Harris* (1985) 165 Cal.App.3d 324, 328 [211 Cal.Rptr. 493], rejected defendant's claim that sanctions were proper because "the investigating officers were selective in tape recording only the most incriminating telephone calls and . . . had mysteriously failed to tape record the actual [criminal] transactions . . . ." Thus, it held that, notwithstanding the recording of four telephone calls, the police had no duty to record other telephone calls and body wire transmissions. (*Id.*, at p. 329.) Following the same rule, the court in *People* v. *Bradley* (1984) 159 Cal.App.3d 399, 403 [205 Cal.Rptr. 485], rejected defendant's argument that "the prosecution effectively destroyed material blood sample evidence by failing to collect and preserve blood-stained articles discovered at the scene of the crime in time for effective testing." Similarly, we reject appellant's argument that the police's "deliberate and unilateral decision to discontinue the tape-recording of the session during the period they were 'confronting' the suspect . . . was the legal equivalent of a post-interrogation erasure of a recording already made."[13]

### Destruction of Evidence

The police collected physical evidence relating to appellant's crimes against the first of his victims. The police sergeant in charge of the property room, who believed that the evidence related only to a rape charge, permitted destruction of the evidence pursuant to an existing policy that provided for destruction of nonmurder felony evidence in the absence of movement in a case for two years. On appellant's motion for sanctions, the trial court found that the prosecution's actions violated a discovery order, but that the prosecution had not acted in bad faith. Therefore, instead of dismissing the charges, it instructed the jury that the improper destruction of evidence could support an inference adverse to the prosecution which may be sufficient to

---

[13] Appellant's reliance on *Stephan* v. *State* (Alaska 1985) 711 P.2d 1156 is misplaced. There, the Alaska Supreme Court held that exclusion of a confession is a proper remedy for the police's failure to record certain interrogations. The court emphasized, however, that it was basing its holding on the Alaska Constitution. (*Id.*, at p. 1160.) It accepted "the state's argument that custodial interrogations need not be recorded to satisfy the due process requirements of the United States Constitution, because a recording does not meet the standard of constitutional materiality recently enunciated" in *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528]. (*Stephan, supra*, at p. 1160.)

raise a reasonable doubt with respect to the charges relating to appellant's first victim.

 Appellant contends that the court erred in refusing to dismiss the relevant charges as a sanction for the prosecution's conduct. Citing *People* v. *Ochoa* (1985) 165 Cal.App.3d 885, 889 [212 Cal.Rptr. 4], and *Dell M.* v. *Superior Court* (1977) 70 Cal.App.3d 782, 786 [144 Cal.Rptr. 418], he asserts that "[t]he appropriate sanction for failing to comply with a standing discovery order is dismissal."[14]

We find appellant's argument unmeritorious. Initially, neither of the cases on which appellant relies establishes that noncompliance with a discovery order *requires* dismissal. On the contrary, in *Dell M.* v. *Superior Court, supra,* 70 Cal.App.3d at page 788, where the prosecution refused to comply with a discovery order, the court held that "[t]he remedy for noncompliance with a discovery order should not be broader than is necessary" to guarantee a fair trial. It established dismissal as an appropriate sanction only "if the trial court declines to exercise its contempt powers, or if the exercise of those powers proves ineffective to bring about sufficient compliance with a discovery order made after a claim of privilege [citation] has been overruled . . . ." (*Id.,* at p. 786.) In *People* v. *Ochoa, supra,* 165 Cal.App.3d at page 887, the prosecution, which refused to comply with a discovery order, argued on appeal only that the trial court had erred in ordering the discovery; it did not argue that dismissal as a sanction was improper. Thus, the decision does not establish dismissal as the only appropriate sanction.[15]

More generally, a trial court may, in the exercise of its discretion, "consider a wide range of sanctions" in response to the prosecution's violation of a discovery order. (*Mendibles* v. *Superior Court* (1984) 162 Cal.App.3d 1191, 1198 [208 Cal.Rptr. 841].) Even where the prosecution acts willfully and in

---

[14]Appellant argues for dismissal only on the basis of the prosecution's noncompliance with the discovery order and expressly does not contend that constitutional due process considerations relating to the destruction of evidence require dismissal. Respondent contends that, because federal constitutional due process considerations do not require dismissal, Proposition 8 prohibits dismissal as a discovery sanction. Given our resolution of the matter, we need not address the constitutional considerations that respondent raises.

[15]Moreover, it is not even clear that, in dismissing, the trial court in *Ochoa* was imposing a sanction for violation of a discovery order or was simply granting the defendants' motion to dismiss the charges based on discriminatory law enforcement. (*People* v. *Ochoa, supra,* 165 Cal.App.3d at p. 887.)

bad faith—which is contrary to the trial court's finding in this case[16]—"the extreme sanction of dismissal is rarely appropriate unless a defendant has established prejudice by the failure of the People to comply with the discovery order [citation] and the prejudice cannot be otherwise cured [citation]; lesser sanctions must be utilized by the trial court, unless the effect of the prosecution's conduct is such that it deprives defendant of the right to a fair trial. [Citation.]" (*Ibid.*) On the record before us, we find that the trial court did not abuse its discretion in giving an instruction rather than dismissing the charges as a sanction for violation of the discovery order. (See *People* v. *Peinado* (1976) 67 Cal.App.3d Supp. 1, 11 [136 Cal.Rptr. 845] [reversing dismissal because a finding against the prosecution was a more appropriate sanction].)

We also reject appellant's attack on the adequacy of the remedial instruction the court gave regarding the destroyed evidence. Citing *People* v. *Zamora* (1980) 28 Cal.3d 88 [167 Cal.Rptr. 573, 615 P.2d 1361], appellant argues that the instruction was inadequate because it "merely instructed the jury that it could generally 'draw an adverse inference to the prosecution . . . ,'" and "failed to supply any real benefit to the defendant . . . ." However, *Zamora* does not establish some talismanic form that a curative instruction must take, but confirms that "the courts enjoy a large measure of discretion in determining the appropriate sanction that should be imposed because of the destruction of discoverable records and evidence." (*Id.*, at p. 99.) In *People* v. *Sassounian* (1986) 182 Cal.App.3d 361, 395 [226 Cal.Rptr. 880], the court found sufficient an instruction informing the jury that if it found willful destruction of evidence, "it could presume that such [evidence] was unfavorable to the People's case." Here, the trial court informed the jury that the employees of the police department had destroyed evidence in violation of court order, described the destroyed items, and concluded: "Because of the destruction of evidence after the Superior Court issued a discovery order, you may draw an adverse inference to the Prosecution in the proof of Counts 1, 2, 3, and 4 of the information. Such adverse inference may be sufficient to raise a reasonable doubt as to" those counts. As the court found in *Sassounian*, we find here that "[n]othing more was required." (*Ibid.*)

## Denial of Severance

 Appellant next complains of the trial court's refusal to sever for trial the charges relating to his first victim, which did not include a murder

---

[16]Appellant does not challenge this finding; without citation to the record, he asserts only that the police destroyed the evidence "due to lax general procedures, sloppy bookkeeping, and reckless disregard for the safekeeping of the evidence . . . ."

charge, from the charges relating to the other victims, which included capital charges. He contends only that severance was proper due to "the prejudice resulting from joinder with charges which require death qualification of the jury."

Following *People* v. *Kelly* (1986) 183 Cal.App.3d 1235 [228 Cal.Rptr. 681], we reject appellant's contention. There, codefendants Kelly and Keenan were jointly tried before a death-qualified jury because an allegation of special circumstances was charged against Keenan. On appeal, Kelly argued that "the trial court's refusal to grant severance exposed him to a death-qualified jury, depriving him of his constitutional right to an impartial jury representative of the 'full spectrum of community attitudes appropriate to [his] noncapital case[].'" (*Id.*, at p. 1241.) In rejecting this claim, we explained that the California Supreme Court "has consistently held that 'exclusion of jurors opposed to capital punishment from the guilt trial [does] not deny the defendant a fair and impartial jury.' [Citations.]" (*Ibid.*) We then followed *People* v. *Lara* (1967) 67 Cal.2d 365, 393-395 [62 Cal.Rptr. 586, 432 P.2d 202], where the court "held that the noncapital defendant's right to a trial by an impartial jury was not violated by his being jointly tried with the capital defendant. [Citation.]" (*Kelly, supra,* at p. 1241.) We likewise conclude that the trial court's refusal to sever in this case was neither a violation of appellant's right to trial by an impartial jury on the charges relating to his first victim nor an abuse of discretion. (See also *Buchanan* v. *Kentucky* (1987) 483 U.S. 402, 420 [97 L.Ed.2d 336, 353-354, 107 S.Ct. 2906] [affirming joint trial of codefendants where death penalty sought only against one]; *People* v. *Meneley, supra,* 29 Cal.App.3d at pp. 51-52 [affirming joint trial for murder of one victim, for which death penalty sought, and kidnapping and assault of second victim].)

### *Amendment of Information*

■ Appellant next complains that the trial court permitted the prosecution to amend counts two, seven, thirteen, and eighteen of the information. Prior to amendment, these counts charged burglaries based on appellant's entry into dwellings "with intent to commit a felony therein." On the prosecution's motion to amend to conform to proof, the court permitted amendment of these counts to include appellant's entry into dwellings "with intent to commit a felony *or theft* therein." (Italics added.) Appellant argues that the court's ruling "implicated [his] 14th Amendment federal constitutional right to due process" and prejudiced him "[b]ecause proof of the robbery allegation was more limited than the proof necessary to establish the theft allegation . . . ."

Following our decision in *People* v. *Williams* (1982) 128 Cal.App.3d 981 [180 Cal.Rptr. 734], we reject appellant's argument. In *Williams,* the prosecution originally charged burglary based on defendants' entry into a dwelling

with the intent to commit theft. (*Id.*, at p. 989.) At the conclusion of its case and in conformity with the evidence at trial, "the prosecutor moved to amend the information to add, 'with intent to commit theft *or other felony*' . . . ." (*Ibid.*) Finding no prejudice, the trial court permitted the amendment. (*Ibid.*) We affirmed on appeal because "section 1009 authorized the court to allow such an amendment," and defendants failed to establish either impairment of their ability to defend against the charges or an abuse of the court's discretion. (*Ibid.*) Appellant has similarly failed to establish that the amendment impaired his ability to defend against the charges or that the trial court abused its discretion. Therefore, we reject his claim.

### *CALJIC No. 2.03*

■ Over appellant's objection, the trial court gave CALJIC No. 2.03, which instructs the jury that it may consider a defendant's willfully false or misleading statements concerning the charged crimes "as a circumstance tending to prove a consciousness of guilt," but cautions that "such conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are matters for your determination."

Relying on *People* v. *Mattson* (1990) 50 Cal.3d 826, 872 [268 Cal.Rptr. 802, 789 P.2d 983], appellant first argues that the giving of this instruction was error because, in light of his subsequent confession, the inference of consciousness of guilt from his initial denial was tenuous. We first note that the court in *Mattson* did not rule that it is error to give CALJIC No. 2.03 if a defendant subsequently admits guilt. The court did not decide the issue because it found no reasonable probability that the jury would have reached a different verdict "absent the error, *if it was error.*" (50 Cal.3d at p. 872, italics added.) More importantly, the factual premise underlying appellant's argument is simply incorrect. Although appellant ultimately admitted to some of the charges, he denied others.[17] By contrast, the defendant in *Mattson* gave a "full confession." (*Ibid.*) Moreover, as discussed previously, appellant offered testimony at trial in an effort to recant his confession even as to the charges he admitted.

Relying on *U.S.* v. *Littlefield* (1st Cir. 1988) 840 F.2d 143, appellant next argues that "CALJIC 2.03 should be limited to situations where (1) the defendant's statement involves 'a matter collateral to the fact establishing guilt' or (2) the defendant's statement is so 'incredible that it's [*sic*] very implausibility suggests that it was created to conceal guilt.' [Citation.]" We

---

[17]For example, he denied the rape charges, including the one for which he was convicted.

agree with respondent that, even if we apply this test,[18] "it would not help appellant because his statements fit easily within" the latter situation. For example, appellant's statement that his first victim, a young girl whom he met on the street, invited him to her home and consented to anal sex, is so incredible that its very implausibility suggests that appellant created it to conceal his guilt.

We also reject appellant's argument that CALJIC No. 2.03 is an erroneous pinpoint instruction. In *People v. Jurado* (1981) 115 Cal.App.3d 470, 495-496 [171 Cal.Rptr. 509], the court rejected the argument that CALJIC No. 2.03 impermissibly singles out a defendant's testimony for juror scrutiny. It reasoned in part that, since the Supreme Court had "condoned the reading of CALJIC No. 2.03 in a case involving false statements, it is doubtful that there is any infirmity with giving such an instruction." (*Jurado, supra,* at p. 496, citing *People v. Green* (1980) 27 Cal.3d 1, 40-41 [164 Cal.Rptr. 1, 609 P.2d 468], disapproved on another ground in *People v. Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99].) In *People v. Griffin* (1988) 46 Cal.3d 1011, 1027 [251 Cal.Rptr. 643, 761 P.2d 103], the Supreme Court again approved the giving of CALJIC No. 2.03, after finding that it did not violate due process because "it *can* be inferred rationally that false statements regarding a crime show a consciousness of guilt of all the offenses committed during a single attack." (Original italics.) In light of these cases, we reject appellant's argument.

Finally, even if the trial court erred in giving the instruction, we find no reasonable probability that the jury would have reached a different verdict absent the error. Appellant himself discusses the prejudicial effect of the instruction only with respect to a charge on which the jury acquitted him. Accordingly, even were we to find error, we would affirm.

The judgment is affirmed.

Merrill, Acting P. J., and Werdegar, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 23, 1992.

---

[18]In reaching our conclusion, we neither endorse *Littlefield* nor suggest that California courts follow it.