Opinion
SPENCER, P. J.
Introduction
Defendant Joann Turner appeals from a judgment entered after a jury found her guilty of possessing cocaine base for the purpose of sale (Health & Saf. Code, § 11351.5) and possessing marijuana for the purpose of sale (id., § 11359). The trial court thereafter sentenced defendant to state prison for the term prescribed by law. We reverse the judgment.
Statement of Facts*
Contentions*
Discussion
I
Defendant contends the prosecutor improperly exercised peremptory challenges on the basis of group bias, thereby denying defendant certain constitutional rights. We agree in part.
A party may not use peremptory challenges to remove prospective jurors solely on the basis of group bias presumed from the jurors’ membership in “an identifiable group distinguished on racial, religious, ethnic, or *417 similar grounds.” (People v. Fuentes (1991) 54 Cal.3d 707, 713 [286 Cal.Rptr. 792, 818 P.2d 75]; accord, People v. Williams (1997) 16 Cal.4th 635, 668 [66 Cal.Rptr.2d 573, 941 P.2d 752].) The use of peremptory challenges for this reason violates the right to trial by an impartial jury under article I, section 16 of the California Constitution. (People v. Wheeler (1978) 22 Cal.3d 258, 276-277 [148 Cal.Rptr. 890, 583 P.2d 748].) It also violates the Fourteenth Amendment to the United States Constitution’s guarantee of equal protection of the laws. (Powers v. Ohio (1991) 499 U.S. 400, 402, 409 [111 S.Ct. 1364, 1366, 113 L.Ed.2d 411]; Batson v. Kentucky (1986) 476 U.S. 79, 89 [106 S.Ct. 1712, 1719, 90 L.Ed.2d 69].)
A party’s use of peremptory challenges is presumed to be valid. (People v. Turner (1994) 8 Cal.4th 137, 165 [32 Cal.Rptr.2d 762, 878 P.2d 521]; People v. Wheeler, supra, 22 Cal.3d at p. 278.) Inasmuch as a peremptory challenge need not be exercised solely for a clearly identifiable bias, as opposed to a suspicion of potential bias, the presumption of validity is essential. Counsel may develop a distrust for a potential juror’s objectivity “ ‘on no more than the “sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another” [citation].’” (People v. Johnson (1989) 47 Cal.3d 1194, 1215-1216 [255 Cal.Rptr. 569, 767 P.2d 1047], cert. den. (1990) 494 U.S. 1038 [110 S.Ct. 1501, 108 L.Ed.2d 636]; accord, Turner, supra, at p. 171.) Thus, the burden is on the complaining party to make a prima facie showing that the peremptory challenges have been exercised in violation of the Constitution. (Johnson, supra, at p. 1216.)
A prima facie case requires the making of as complete a record as possible, establishing the persons excluded are a cognizable group, and showing from all the circumstances of the case that there is a strong likelihood the persons are excluded because of their group association. (People v. Williams, supra, 16 Cal.4th at pp. 663-664; People v. Fuentes, supra, 54 Cal.3d at p. 714.) Unconstitutional exclusion may be shown in part by establishing a pattern of challenges eliminating most or all members of the cognizable group. (People v. Wheeler, supra, 22 Cal.3d at pp. 280-281.) The defendant’s membership in the excluded group also can be an indicator of discriminatory exclusion (People v. Turner (1986) 42 Cal.3d 711, 719 [230 Cal.Rptr. 656, 726 P.2d 102]; Wheeler, supra, at p. 281), as can the absence of any shared characteristics among the excluded jurors other than race (Id. at p. 280).
Trial judges are “well situated to bring to bear on [the] question [of unconstitutional exclusion] their powers of observation, their understanding *418 of trial techniques, and their broad judicial experience.” (People v. Wheeler, supra, 22 Cal.3d at p. 281.) Accordingly, we give great deference to the court’s finding that the complaining party has not established a prima facie case of unconstitutional challenges. (People v. Sanders (1991) 51 Cal.3d 471, 501 [273 Cal.Rptr. 537, 797 P.2d 561]; People v. Wimberly (1992) 5 Cal.App.4th 773, 782 [7 Cal.Rptr.2d 152]; see also Batson v. Kentucky, supra, 476 U.S. at p. 98, fn. 21 [106 S.Ct. at p. 1724].)
Defendant made two motions challenging the prosecutor’s use of peremptory challenges to excuse African-American jurors. She made the first motion immediately after the prosecutor exercised his second peremptory challenge to excuse an African-American woman. The prosecutor argued that defense counsel had failed to demonstrate a pattern of discriminatory exclusion but offered to state his reasons for excusing this juror if the court so desired. The court suggested that he do so “for the record.”
The prosecutor explained that one reason he excused Juror No. 4845 was that “she is from Inglewood. And my particular experience with Inglewood jurors has not been good. HQ And it’s not a race-related issue. It’s more of an issue of logistics, where they live. HQ It seems to me that people in that location . . . may or may not consider drugs the problem that people in other locations do. HQ I am also concerned that she has no children^] ... I try to pick jurors that do have children, again, because they consider the issue of drugs in the manner that [I] believe [is] different from people that have no children do.” The prosecutor also noted that Juror No. 4845 appeared unfriendly.
In denying the motion, the trial court expressed doubt that Juror No. 4845 had an unfriendly demeanor. The court neither accepted nor rejected expressly the prosecutor’s other reasons, however, but stated only that “I don’t find that there is a pattern at this point.”
Defendant made a second motion on the ground that the prosecutor was exercising peremptory challenges on the basis of group bias after the prosecutor exercised three additional peremptory challenges. He exercised the first to excuse a childless juror. He used the third to excuse an African-American woman who had a child, Juror No. 8313. Her brother had been convicted of conspiracy to sell drugs. She believed the case had been handled in a very unfair manner, in that prosecutors blamed her brother for the crime of others who were selling drugs from the brother’s business. She had been told that her brother’s defense attorney handled the case poorly.
*419 Defense counsel argued that the prosecutor now had excused the only two African-American jurors who had come into the jury box and undergone voir dire. He noted that there were only 4 African-Americans in the panel of 30 chosen for voir dire. The prosecutor once again argued that defense counsel had not demonstrated a pattern of exclusion. Defense counsel responded that although the prosecutor purported to excuse Juror No. 4845 because she lived in Inglewood and was childless, there remained on the panel another juror from Inglewood and two childless jurors. He also noted that another juror with a relative who had been convicted of a drug offense remained on the jury. In his view, this demonstrated a pattern of discriminatory exclusion. The prosecutor noted that he had excused one childless juror. It was possible he would excuse the other juror from Inglewood as well. Moreover, what troubled him most about Juror No. 8313’s situation was that her brother’s case so closely resembled the present case.
After doing some research and hearing additional argument, the court made its decision. The court stated that there was “no doubt” that had the first African-American juror not been excused, “this would be a very simple decision.” The court could not make a finding that the prosecutor excused Juror No. 8313 “simply because of her race.” With respect to the first juror, the court stated that it could not “get into [the prosecutor’s] mind and say he excluded [Juror No. 4845] because of race.” The court acknowledged that defense counsel had raised a good point, however. As the court phrased it, “If there are more African-Americans living in a community and [counsel] says, I am going to exclude a person from that city, it is dé facto discrimination.” Nonetheless, the court stated, “We are not going back in time,” meaning the court would not reconsider its denial of the first motion. The court thereupon denied the motion.
As the trial court recognized, the arrest or conviction of a juror’s relative provides a legitimate, group-neutral basis for excluding a juror. (People v. Garceau (1993) 6 Cal.4th 140, 172 [24 Cal.Rptr.2d 664, 862 P.2d 664].) The prosecutor’s reason for excusing Juror No. 8313 therefore was valid. The problem lies with the exclusion of Juror No. 4845. Indeed, the trial court was troubled by the exclusion of this juror.
At the time of the second motion, defense counsel had made a prima facie case of discriminatory exclusion. There were but four African-Americans in the pool available for jury selection. The two who had been questioned in voir dire had been excused. Jurors similar in characteristics other than race had been retained. These factors, combined with defendant’s African-American heritage, constitute a prima facie case. (People v. Turner, supra, 42 *420 Cal.3d at p. 719; People v. Wheeler, supra, 22 Cal.3d at pp. 280-281.) Inasmuch as the evidence supports it, we presume the court made an implied finding that defense counsel had made a prima facie case. (People v. Arias (1996) 13 Cal.4th 92, 135 [51 Cal.Rptr.2d 770, 913 P.2d 980]; People v. Fuentes, supra, 54 Cal.3d at pp. 716-717.) The burden therefore shifted to the prosecutor to present a neutral, case-related explanation of the challenge to Juror No. 4845. (People v. Johnson, supra, 47 Cal.3d at p. 1216.)
It is essential that the proffered reason be nondiscriminatory—not based on the juror’s group status—and that, “under all the circumstances, including logical relevance to the case,” the reason appears to be genuine, thus supporting the conclusion that “group prejudice alone was not the basis” for the exclusion. (People v. Montiel (1993) 5 Cal.4th 877, 910, fn. 9 [21 Cal.Rptr.2d 705, 855 P.2d 1277], first italics added.) Stated otherwise, it must be clear that the proffered reasons “were not mere ‘surrogate[s]’ or ‘prox[ies]’ for group membership.” (People v. Alvarez (1996) 14 Cal.4th 155, 197 [58 Cal.Rptr.2d 385, 926 P.2d 365].) What is essential is that the characteristic be individual to the juror rather than based on the prosecutor’s personal stereotypical views. (Cf. U.S. v. Bishop (9th Cir. 1992) 959 F.2d 820, 821 [prosecutor challenged African-American jurors because they “lived in a predominantly low-income, black neighborhood and [were] therefore likely to believe the police ‘pick on black people’ ”].)
Here, the prosecutor placed the greatest emphasis on Juror No. 4845’s place of residence. He purported to base his distrust of jurors from Inglewood on past experience with such jurors and argued vehemently that this was not a race-related matter. It might be said that he protested too much. The population of Inglewood is, as defense counsel stressed, substantially African-American. According to data collected by the United States Census Bureau during the 2000 census, African-Americans comprise 49.9 percent of Inglewood’s voting age population. While other races may comprise a bare majority of the voting age population,[1] African-Americans so predominate that an “Inglewood juror” is twice as likely to be African-American as to be any other race. To state that “Inglewood jurors” have a different attitude toward the drug culture is just as stereotypical as the reason given in Bishop. Crediting past experiences with Inglewood jurors as the foundation for this view is a “mere ‘surrogate[]’ or ‘prox[y]’ for group membership.” (People v. Alvarez, supra, 14 Cal.4th at p. 197.)
When the challenged party fails to demonstrate that the excluded jurors in the suspect classification were not excluded because of group bias, the error *421 is prejudicial per se. (People v. Turner, supra, 42 Cal.3d at p. 728.) That is the case here. The prosecutor failed to demonstrate that Juror No. 4845 was not excluded because of group bias. The judgment therefore must be reversed. We shall address the remaining issues for the guidance of the trial court, however.
H, III*
The judgment is reversed.
Mallano, J., concurred.

See footnote, ante, page 413.

Four percent of the voting age population reports being of two or more races. It thus is not clear that all voting age residents of Inglewood claiming African-American heritage to some significant degree do not comprise a majority of the population. (See Appen.)

See footnote, ante, page 413.