109 Cal.Rptr.2d 138 (2001)
90 Cal.App.4th 413
The PEOPLE, Plaintiff and Respondent,
v.
Joann TURNER, Defendant and Appellant.
No. B138940.
Court of Appeal, Second District, Division One.
June 28, 2001.
As Modified July 17, 2001.
*139 Mark S. Givens, under appointment by the Court of Appeal, for Defendant and Appellant.
*140 Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Robert F. Katz, Supervising Deputy Attorney General, and Roy C. Preminger, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]
SPENCER, P.J.

INTRODUCTION
Defendant Joann Turner appeals from a judgment entered after a jury found her guilty of possessing cocaine base for the purpose of sale (Health & Saf.Code, § 11351.5) and possessing marijuana for the purpose of sale (id., § 11359). The trial court thereafter sentenced defendant to state prison for the term prescribed by law. We reverse the judgment.

STATEMENT OF FACTS[**]

CONTENTIONS[**]

DISCUSSION

I
Defendant contends the prosecutor improperly exercised peremptory challenges on the basis of group bias, thereby denying defendant certain constitutional rights. We agree in part.
A party may not use peremptory challenges to remove prospective jurors solely on the basis of group bias presumed from the jurors' membership in "an identifiable group distinguished on racial, religious, ethnic, or similar grounds." (People v. Fuentes (1991) 54 Cal.3d 707, 713, 286 Cal.Rptr. 792, 818 P.2d 75; accord, People v. Williams (1997) 16 Cal.4th 635, 668, 66 Cal.Rptr.2d 573, 941 P.2d 752.) The use of peremptory challenges for this reason violates the right to trial by an impartial jury under article I, section 16 of the California Constitution. (People v. Wheeler (1978) 22 Cal.3d 258, 276-277, 148 Cal.Rptr. 890, 583 P.2d 748.) It also violates the 14th Amendment to the United States Constitution's guarantee of equal protection of the laws. (Powers v. Ohio (1991) 499 U.S. 400, 402, 409, 111 S.Ct. 1364, 113 L.Ed.2d 411; Batson v. Kentucky (1986) 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69.)
A party's use of peremptory challenges is presumed to be valid. (People v. Turner (1994) 8 Cal.4th 137, 165, 32 Cal.Rptr.2d 762, 878 P.2d 521; People v. Wheeler, supra, 22 Cal.3d at p. 278, 148 Cal.Rptr. 890, 583 P.2d 748.) Inasmuch as a peremptory challenge need not be exercised solely for a clearly identifiable bias, as opposed to a suspicion of potential bias, the presumption of validity is essential. Counsel may develop a distrust for a potential juror's objectivity "`on no more than the "sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another" [citation].'" (People v. Johnson (1989) 47 Cal.3d 1194, 1215-1216, 255 Cal. Rptr. 569, 767 P.2d 1047, cert. den. (1990) 494 U.S. 1038, 110 S.Ct. 1501, 108 L.Ed.2d 636; accord, Turner, supra, at p. 171, 32 Cal.Rptr.2d 762, 878 P.2d 521.) Thus, the burden is on the complaining party to make a prima facie showing that the peremptory challenges have been exercised in violation of the Constitution. (Johnson, supra, at p. 1216, 255 Cal.Rptr. 569, 767 P.2d 1047.)
A prima facie case requires the making of as complete a record as possible, establishing the persons excluded are a cognizable group, and showing from all the circumstances of the case that there is a strong likelihood the persons are excluded *141 because of their group association. (People v. Williams, supra, 16 Cal.4th at pp. 663-664, 66 Cal.Rptr.2d 573, 941 P.2d 752; People v. Fuentes, supra, 54 Cal.3d at p. 714, 286 Cal.Rptr. 792, 818 P.2d 75.) Unconstitutional exclusion may be shown in part by establishing a pattern of challenges eliminating most or all members of the cognizable group. (People v. Wheeler, supra, 22 Cal.3d at pp. 280-281, 148 Cal. Rptr. 890, 583 P.2d 748.) The defendant's membership in the excluded group also can be an indicator of discriminatory exclusion (People v. Turner (1986) 42 Cal.3d 711, 719, 230 Cal.Rptr. 656, 726 P.2d 102; Wheeler, supra, at p. 281, 148 Cal.Rptr. 890, 583 P.2d 748), as can the absence of any shared characteristics among the excluded jurors other than race (Id. at p. 280,148 Cal.Rptr. 890, 583 P.2d 748).
Trial judges are "well situated to bring to bear on [the] question [of unconstitutional exclusion] their powers of observation, their understanding of trial techniques, and their broad judicial experience." (People v. Wheeler, supra, 22 Cal.3d at p. 281, 148 Cal.Rptr. 890, 583 P.2d 748.) Accordingly, we give great deference to the court's finding that the complaining party has not established a prima facie case of unconstitutional challenges. (People v. Sanders (1990) 51 Cal.3d 471, 501, 273 Cal.Rptr. 537, 797 P.2d 561; People v. Wimberly (1992) 5 Cal.App.4th 773, 782, 7 Cal.Rptr.2d 152; see also Batson v. Kentucky, supra, 476 U.S. at p. 98, fn. 21, 106 S.Ct. 1712.)
Defendant made two motions challenging the prosecutor's use of peremptory challenges to excuse African-American jurors. She made the first motion immediately after the prosecutor exercised his second peremptory challenge to excuse an African-American woman. The prosecutor argued that defense counsel had failed to demonstrate a pattern of discriminatory exclusion but offered to state his reasons for excusing this juror if the court so desired. The court suggested that he do so "for the record."
The prosecutor explained that one reason he excused Juror No. 4845 was that "she is from Inglewood. And my particular experience with Inglewood jurors has not been good. [¶] And it's not a racerelated issue. It's more of an issue of logistics, where they live. [¶] It seems to me that people in that location ... may or may not consider drugs the problem that people in other locations do. [¶] I am also concerned that she has no children[.] ... I try to pick jurors that do have children, again, because they consider the issue of drugs in the manner that [I] believe [is] different from people that have no children do." The prosecutor also noted that Juror No. 4845 appeared unfriendly.
In denying the motion, the trial court expressed doubt that Juror 4845 had an unfriendly demeanor. The court neither accepted nor rejected expressly the prosecutor's other reasons, however, but stated only that "I don't find that there is a pattern at this point."
Defendant made a second motion on the ground that the prosecutor was exercising peremptory challenges on the basis of group bias after the prosecutor exercised three additional peremptory challenges. He exercised the first to excuse a childless juror. He used the third to excuse an African-American woman who had a child, Juror No. 8313. Her brother had been convicted of conspiracy to sell drugs. She believed the case had been handled in a very unfair manner, in that prosecutors blamed her brother for the crime of others who were selling drugs from the brother's business. She had been told that her brother's defense attorney handled the case poorly.
*142 Defense counsel argued that the prosecutor now had excused the only two African-American jurors who had come into the jury box and undergone voir dire. He noted that there were only 4 African-Americans in the panel of 30 chosen for voir dire. The prosecutor once again argued that defense counsel had not demonstrated a pattern of exclusion. Defense counsel responded that although the prosecutor purported to excuse Juror No. 4845 because she lived in Inglewood and was childless, there remained on the panel another juror from Inglewood and two childless jurors. He also noted that another juror with a relative who had been convicted of a drug offense remained on the jury. In his view, this demonstrated a pattern of discriminatory exclusion. The prosecutor noted that he had excused one childless juror. It was possible he would excuse the other juror from Inglewood as well. Moreover, what troubled him most about Juror No. 8313's situation was that her brother's case so closely resembled the present case.
After doing some research and hearing additional argument, the court made its decision. The court stated that there was "no doubt" that had the first African-American juror not been excused, "this would be a very simple decision." The court could not make a finding that the prosecutor excused Juror No. 8313 "simply because of her race." With respect to the first juror, the court stated that it could not "get into [the prosecutor's] mind and say he excluded [Juror No. 4845] because of race." The court acknowledged that defense counsel had raised a good point, however. As the court phrased it, "If there are more African-Americans living in a community and [counsel] says, I am going to exclude a person from that city, it is de facto discrimination." Nonetheless, the court stated, "We are not going back in time," meaning the court would not reconsider its denial of the first motion. The court thereupon denied the motion.
As the trial court recognized, the arrest or conviction of a juror's relative provides a legitimate, group-neutral basis for excluding a juror. (People v. Garceau (1993) 6 Cal.4th 140, 172, 24 Cal.Rptr.2d 664, 862 P.2d 664.) The prosecutor's reason for excusing Juror No. 8313 therefore was valid. The problem lies with the exclusion of Juror No. 4845. Indeed, the trial court was troubled by the exclusion of this juror.
At the time of the second motion, defense counsel had made a prima facie case of discriminatory exclusion. There were but four African-Americans in the pool available for jury selection. The two who had been questioned in voir dire had been excused. Jurors similar in characteristics other than race had been retained. These factors, combined with defendant's African-American heritage, constitute a prima facie case. (People v. Turner, supra, 42 Cal.3d at p. 719, 230 Cal.Rptr. 656, 726 P.2d 102; People v. Wheeler, supra, 22 Cal.3d at pp. 280-281, 148 Cal. Rptr. 890, 583 P.2d 748.) Inasmuch as the evidence supports it, we presume the court made an implied finding that defense counsel had made a prima facie case. (People v. Arias (1996) 13 Cal.4th 92, 135, 51 Cal. Rptr.2d 770, 913 P.2d 980; People v. Fuentes, supra, 54 Cal.3d at pp. 716-717, 286 Cal.Rptr. 792, 818 P.2d 75.) The burden therefore shifted to the prosecutor to present a neutral, case-related explanation of the challenge to Juror No. 4845. (People v. Johnson, supra, 47 Cal.3d at p. 1216, 255 Cal.Rptr. 569, 767 P.2d 1047.)
It is essential that the proffered reason be nondiscriminatorynot based on the juror's group statusand that, "under all the circumstances, including logical relevance to the case," the reason appears to be genuine, thus supporting the conclusion *143 that "group prejudice alone was not the basis" for the exclusion. (People v. Montiel (1993) 5 Cal.4th 877, 910, fn. 9, 21 Cal.Rptr.2d 705, 855 P.2d 1277, italics.) Stated otherwise, it must be clear that the proffered reasons "were not mere `surrogate[s]' or `prox[ies]' for group membership." (People v. Alvarez (1996) 14 Cal.4th 155, 197, 58 Cal.Rptr.2d 385, 926 P.2d 365.) What is essential is that the characteristic be individual to the juror rather than based on the prosecutor's personal stereotypical views. (Compare U.S. v. Bishop (9th Cir.1992) 959 F.2d 820, 821 [prosecutor challenged African-American jurors because they "lived in a predominantly low-income, black neighborhood and [were] therefore likely to believe the police `pick on black people'"].)
Here, the prosecutor placed the greatest emphasis on Juror No. 4845's place of residence. He purported to base his distrust of jurors from Inglewood on past experience with such jurors and argued vehemently that this was not a race-related matter. It might be said that he protested too much. The population of Inglewood is, as defense counsel stressed, substantially African-American. According to data collected by the United States Census Bureau during the 2000 census, African-Americans comprise 49.9 percent of Inglewood's voting age population. While other races may comprise a bare majority of the voting age population,[1] African-Americans so predominate that an "Inglewood juror" is twice as likely to be African-American as to be any other race. To state that "Inglewood jurors" have a different attitude toward the drug culture is just as stereotypical as the reason given in Bishop. Crediting past experiences with Inglewood jurors as the foundation for this view is a "mere `surrogate[ ]' or `prox[y]' for group membership." (People v. Alvarez, supra, 14 Cal.4th at p. 197, 58 Cal.Rptr.2d 385, 926 P.2d 365.)
When the challenged party fails to demonstrate that the excluded jurors in the suspect classification were not excluded because of group bias, the error is prejudicial per se. (People v. Turner, supra, 42 Cal.3d at p. 728, 230 Cal.Rptr. 656, 726 P.2d 102.) That is the case here. The prosecutor failed to demonstrate that juror 4845 was not excluded because of group bias. The judgment therefore must be reversed. We shall address the remaining issues for the guidance of the trial court, however.

II-III[***]
The judgment is reversed.
MALLANO, J., concurs.
ORTEGA, J.:
I dissent.
I disagree with the majority opinion's analysis of the Wheeler issue. (People v. Wheeler (1978) 22 Cal.3d 258, 148 Cal. Rptr. 890, 583 P.2d 748.) While the opinion relies on a census showing that nearly half of Inglewood residents are African-Americans, it ignores the other side of the cointhe majority of Inglewood residents are not African American. Without resorting to census information, I am comfortable with the notion that Inglewood contains residents of many racial and ethnic backgrounds, including Caucasians. That means anyone who distrusts Inglewood residents in general is not focusing *144 on any particular racial or ethnic group. I don't see how this translates into a racial reason for excusing Inglewood residents from the jury.
The majority opinion editorializes that the prosecutor "protested too much." This can be interpreted only as a conclusion that the prosecutor is a racist. I'm sorry to see such a terrible aspersion cast. There is nothing in this record to demonstrate that the prosecutor even knew the racial and ethnic makeup of Inglewood.
I feel it is improper to use race as even a partial reason for exercising a peremptory, even if there are myriad other valid grounds for excusing a juror. On the other hand, reasons other than those prohibited by Wheeler and its progeny need not meet any particular requirements. Indeed, they can be irrational reasons, so long as the lawyer is not factoring in race or some other prohibition.
As the California Supreme Court commands, we "review a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising peremptory challenges with great restraint. The party seeking to justify a suspect excusal need only offer a genuine, reasonably specific, race- or groupneutral explanation related to the particular case being tried. [Citations.] The justification need not support a challenge for cause, and even a trivial reason, if genuine and neutral, will suffice. [Citations.] If the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.... [Citation.] [Citations.] The determination whether substantial evidence exists to support the prosecutor's assertion of a nondiscriminatory purpose is a purely factual question. [Citation.]" (People v. Ervin (2000) 22 Cal.4th 48, 74-75, 91 Cal.Rptr.2d 623, 990 P.2d 506, internal quotations marks omitted.)
Disagreements with a prosecutor's stated reasons are relevant only if they tend to show that the prosecutor was using sham excuses to cover up racial reasons for exercising peremptory challenges. Otherwise, reviewing a prosecutor's reasons for accuracy and substance would transmogrify peremptory challenges into challenges for cause. Wheeler and related cases prohibit a particular type of group bias. But most groups are not protected. Nothing prevents a lawyer, for example, from systematically excluding engineers or politicians or lawyers. I am confident that if the prosecutor had said he distrusts people who live in Beverly Hills, the majority would not conclude his views were racist.
I have no quarrel with the federal Bishop case, as characterized by the 9th Circuit. There, the "prosecutor explained the challenge as based in part on the fact the black juror lived in a predominantly low-income, black neighborhood and was therefore likely to believe the police `pick on black people.'" (United States v. Bishop (9th Cir.1992) 959 F.2d 820, 821.) The challenge, motivated primarily because the juror was African-American, was improper. A white juror, otherwise similarly situated, apparently would not have been excused.
The Ervin court upheld the peremptory challenges when "the prosecutor expressed reasonably specific and neutral reasons, although not particularly logical or substantial ones, for excusing each prospective juror." (People v. Ervin, supra, 22 Cal.4th at p. 75, 91 Cal.Rptr.2d 623, 990 P.2d 506.) One can argue here that the prosecutor's reason for excluding the Inglewood juror was not particularly logical or substantial. But peremptory challenges do not have to be rational. They just must not be based on racial *145 grounds. I do not feel this record justifies overturning the trial court's denial of the Wheeler motion.

APPENDIX

NOTES
[*] Under California Rules of Court, rules 976(b) and 976.1, only the Introduction and Part I of the Discussion and the last sentence of the majority opinion, and the dissenting opinion in its entirety are certified for publication.
[**] See footnote *, ante.
[1] Four percent of the voting age population reports being of two or more races. It thus is not clear that all voting age residents of Inglewood claiming African-American heritage to some significant degree do not comprise a majority of the population. (See Appendix.)
[***] See footnote *, ante.